1  VALERIE VANAMAN, SBN 42406
   GEORGE D. CROOK, SBN 60889
2  **NEWMAN AARONSON VANAMAN**
   14001 Ventura Boulevard
3  Sherman Oaks, CA 91423
   Telephone: (818) 990-7722
4  Facsimile: (818) 501-1306

5  Attorneys for Plaintiffs
   H.B., by and through his Guardian
6  Ad Litem PENNY B.; PENNY B.

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                      **WESTERN DIVISION**

11

12

13  H.B., by and through his Guardian Ad      ) CASE NO. CV 04-8572 FMC (SSx)
    Litem PENNY B.; PENNY B.,                 )
14                                            ) **PLAINTIFFS' REPLY**
            Plaintiffs,                       ) **MEMORANDUM OF POINTS**
15                                            ) **AND AUTHORITIES IN**
    vs.                                       ) **SUPPORT OF MOTION FOR**
16                                            ) **ATTORNEYS' FEES AND**
                                              ) **COSTS**
17  LAS VIRGENES UNIFIED  SCHOOL             ) **[Supporting Declarations Filed**
    DISTRICT, ET AL.,                         ) **Concurrently Herewith Under**
18                                            ) **Separate Cover]**
            Defendants.                       )
19  _____          ) DATE: May 12, 2008
                                              ) TIME:  10:00 A.M.
20                                              CTRM: 750

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

4      II.     THE FACTUAL PREMISE UNDERLYING DEFENDANTS'
               OPPOSITION IS FALSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

6      III.    THE CASE IS NOT MOOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7      IV.     PLAINTIFFS' MOTION FOR FEES AND COSTS SURVIVES

8              EVEN IF THE CASE IS MOOT IN THAT THIS COURT
               HAS INDEPENDENT JURISDICTION OVER THE MOTION

9              PURSUANT TO 20 U.S.C. § 1415(i)(3) . . . . . . . . . . . . . . . . . . . . . . . . 11

10
       V.      H.B. IS THE PREVAILING PARTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
11

12     VI.     THERE IS NO BASIS FOR REDUCING THE FEES
               SOUGHT BY H.B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13

14     VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

## **STATUTES**

20 U.S.C. § 1400 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

## **SUPREME COURT CASES**

*Adarand Constructors, Inc. v. Slater,*
     528 U.S. 216 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Buckhannon Board and Care Home, Inc., et al. v.*
   *West Virginia Department of Health and Human*
   *Resources, et al.,*
     532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Hensley v. Eckerhart,*
     461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Honig v. Doe,*
     484 U.S. 305 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Lewis v. Continental Bank Corp.,*
     494 U.S. 472 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Murphy v. Hunt,*
     455 U.S. 478 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*New Hampshire v. Maine,*
     532 U.S. 742 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sole v. Wyner,*
  ___ U.S.___, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007) . . . . . . . . . . . . . . . . . 18

//
//

1

## <u>TABLE OF AUTHORITIES</u>
(CONTINUED)

2

3

4

## <u>NINTH CIRCUIT CASES INCLUDING DISTRICT COURTS THEREIN</u>

5

*Barlow-Gresham Union High School District No. 2 v. Mitchell,*

6

940 F.2d 1280 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

7

*Brandon E. v. Dep't of Educ.,*

8

2008 U.S. Dist. LEXIS 15755 (D. Haw. Feb. 29, 2008) . . . . . . . . . . . . . 13

9

*Department of Education v. Rodarte,*

10

127 F. Supp. 2d 1103 (D. Haw. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11

*K.D. v. Oakley Union Elem. Sch. Dist.,*

12

234 F. Supp. 2d 1156 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13

14

*Los Angeles Unified School District v. D.L.,*

15

2008 WL 683392 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16

*Noyes v. Grossmont Union High Sch. Dist.,*

17

331 F. Supp. 2d 1233 (S.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 13-14

18

*Ostby v. Oxnard Union High,*

19

209 F. Supp. 2d 1035 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . 12, 13, 14

20

*Prescott v. Palos Verdes Peninsula Unified School District,*

21

659 F. Supp. 921 (C.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22

*Shapiro v. Paradise Valley Unified School District, No. 69,*

23

374 F.3d 857 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24

*W.G. v. Board of Trustees of Target Range School District No. 23,*

25

900 F.2d 1479 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26

*Watson v. County of Riverside,*

27

300F.3d 1092, 1096 ( 9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28

# TABLE OF AUTHORITIES

(CONTINUED)

## NINTH CIRCUIT CASES INCLUDING DISTRICT COURTS THEREIN

(CONTINUED)

*Witte v. Clark County School District,*
  197 F.3d 1271 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Williams v. Alioto,*
  625 F.2d 845 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

## OTHER CIRCUIT CASES INCLUDING DISTRICT COURTS THEREIN

*Board of Education of Downers Grove Grade School District No. 58 v. Steven L.,*
  89 F.3d 464 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Board of Educ. of Oak Park v. Nathan R.,*
  199 F.3d 377 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*C. v. Plainfield Board of Education,*
  382 F.Supp. 2d 347 (D.C.Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Combs by Combs v. School Board,*
  15 F.3d 357 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Curtis K. v. Sioux City Community School District,*
  895 F. Supp. 1197 (N.D.Iowa 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Doe v. Marshall,*
  622 F.2d 118 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

# TABLE OF AUTHORITIES
(CONTINUED)

## OTHER CIRCUIT CASES INCLUDING DISTRICT COURTS THEREIN
(CONTINUED)

*Duane M. v. Orleans Parish School Board*,
   861 F.2d 115 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Cassidy*,
   892 F.2d 637 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lillbask ex rel. Mauclaire v. Connecticut Department of Education*,
   387 F.3d 77 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Robert D. v. Sobel*,
   688 F. Supp. 861 (S.D. N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*S-1 and S-2 v. Spangler*,
   832 F.2d 294 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Scarano v. Central R. Co.*,
   203 F.2d 510 (3d Cir. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*Sioux City Community School District*,
   895 F. Supp. 1197 (N.D. Iowa 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stellato v. Board of Education of Ellenville Central School District*,
   842 F. Supp. 1512 (N.D. N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. McCaskey*,
   9 F.3d 368 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>
(CONTINUED)

## <u>SECONDARY AUTHORITY</u>

Jones, Rosen, Wegner and Jones,

*Rutter Group Practice Guide: Federal Civil Trials and Evidence*

(The Rutter Group 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Defendant's contention that mootness has deprived this Court of jurisdiction to hear this motion for attorneys' fees is wrong on the facts and wrong on the law. Its last minute claim of mootness is a cynical attempt to avoid paying the attorney fees its own conduct caused H.B.'s family to incur.  It is wrong on the facts because the problems H.B. and his family had with the District are far from over.  To the contrary, those problems are about to happen again.   For the upcoming IEP meeting, the District has brought in the same team of "experts" to assess and observe H.B. for the that this Court concluded would not give due consideration to the views of H.B.'s parents as to what H.B. required for an appropriate educational program.  Sad as it is for H.B. and his family, this case is far from moot.

The District is wrong on the law. As a matter of law, H.B. is a prevailing party and even if the case were now moot, this Court would still have jurisdiction to award attorneys' fees.   The IDEA grants this Court jurisdiction, at 20 U.S.C. § 1415(i)(3)(B), to "award reasonable attorneys' fees."  When, as here, an independent basis for attorneys' fee jurisdiction exists, mootness is no bar to an award.  Instead, the IDEA requires that prevailing parents be able to pursue their substantive rights by enforcing their statutory right to attorneys' fees.  *See Burlow-Gresham Union High School District No. 2 v. Mitchell*, 940 F.2d 1280, 1286 (9th Cir. 1991).  As for the District's contention that H.B. is not entitled to attorneys' fees because he is not the prevailing party, this Court's rulings unequivocally demonstrate the opposite. This Court's Order of a Preliminary Injunction or its Order that *reversed* a California Special Education Hearing Officer's decision in the District's favor are each independently sufficient to make H.B. the prevailing party.

If the District actually believed that this Court had no jurisdiction to conduct proceedings pursuant to the remand from the Ninth Circuit, it surely would have recognized its obligation to bring that to the Court's attention well before those proceedings resulted in a decision against it. It could have done so before or during oral argument before the Ninth Circuit on June 14, 2007, or when the matter returned to this Court on remand on July 3, 2007, or at any time before the Court held its evidentiary hearing on February 1, 2008 and considered the briefs filed thereafter. Given that it elected not to do so, it is apparent that its current claim that the Court's decision is a purposeless "pronouncement" that merely provided H.B.'s parents a hollow "sense of victory" (Opp., at 10-11) is nothing more than its effort to avoid paying attorney fees for the litigation it has caused this family to endure. The District now contends that H.B.'s attorneys' fees should be reduced because of his "unnecessary protraction of this litigation." (*Id*. at 20.) This litigation *was* unnecessarily protracted, but it was entirely the District's doing. Its insistence on spending vast amounts of public funds for experts and out-of-state counsel, far out of proportion to what it could save by forcing H.B. to attend a District School—presumably to achieve its own hollow "sense of victory"—is the reason for the level of H.B.'s attorneys fees. It is only just, and it is the law, that the District now pay those fees.

## II.

## THE FACTUAL PREMISE UNDERLYING DEFENDANT'S OPPOSITION IS FALSE.

The Defendants' Opposition is based on a claim that the harm complained of in this matter was extinguished when H.B.'s parents found it necessary to return him to a District program for a time and therefore moot because the procedural error, predetermination, is never going to occur again. The factual premise of that argument

is based on the Declaration of Mary Schillinger.  The statements contained in that Declaration are either incomplete, inaccurate or misleading and fail to provide the Court with an accurate and complete description of the circumstances surrounding the District's claim of mootness.

The Declaration of Penny B. filed concurrently herewith under separate cover, provides a detailed description of the actual circumstances surrounding the decision to have H.B. try the District program during the 2006-2007 school year, what took place during that try, and why he is now back at the Elliott Institute. It also provides a detailed recitation of the facts regarding the District's current assessment activities and the conclusion that the District has again brought in Dr. B.J. Freeman and Dr. Mitch Taubman to "assess" and "observe" H.B. in preparation for holding an IEP before the end of this school year to bring H.B. back to the District.

H.B. did attend a District's program for a portion of the 2006-2007 school year. Declarations of Penny B., Valerie Vanaman and Alicia Elliott In Support Of Plaintiffs' Reply Memorandum, page 3, lines 4-9 (hereinafter "Decs."). For the 2004-2005 and 2005-2006 school years, H.B. was attending Elliott pursuant to what is commonly referred to as the "stay put" provision of the Individuals With Disabilities Education Act, 20 U.S.C. § 1415(j), and this Court's Order Granting Motion for Preliminary Injunction of March 17, 2006. Decs., page 16, lines 27 - 28 through page 17, lines 1-9; Declaration of George Crook In Support Of Plaintiffs' Reply To Defendants' Opposition To Plaintiffs' Motion For Attorneys Fees and Costs, page 292, lines 19-22 (hereinafter "Crook Dec."). Since the last agreed to placement subject to stay put provided for tuition payment and payment for some services, but not home to school transportation by a school bus, to get H.B. to the Elliott Institute each day, Penny B. was required to drive 228 miles each school day. Decs., page 2, lines 16-17.

As this matter dragged on and on and the District absolutely refused to consider any reasonable offer for resolution, making the two round trips a day became increasingly difficult and physically demanding on Penny B. This was particularly true after she developed a series of medical problems which required hospitalization. Decs., page 2, lines 22-25. Since the classroom for the 2006-2007 school year was in a middle school setting and not the Lupin Hill Elementary School offered in the June, 2004 IEP, and since various promises had been made by District personnel about parental involvement and services in that program, the family decided that emotionally, physically, and financially they had no option other than to try out the program the District was offering for the 2006-2007 school year. Decs., page 2, lines 23-27.

Unfortunately, soon after H.B. began the 2006-2007 school year in the District's classroom, it became apparent that promises as to parental involvement, services, and effective programming were going to be unfilled. Although the District's teacher told the parents at the time H.B. entered the District's program that he was well behaved, able to follow directions, and able to stop when asked to while the class was on a walk or outside the classroom, all of these skills and behaviors were extinguished by the District's program. Decs., page 3, lines 7-15. The District program and staff could not maintain the skills and behaviors H.B. had developed at Elliott, yet they were not interested in anything the parents had to say about how they might do things differently so that H.B. would not lose his skills. Decs., page 3, lines 16-22.

Unlike the behavior he demonstrated when he came to the District program from Elliott, in the District's program H.B. ceased responding to the stop command, ceased being well behaved, and ceased being able to follow directions. Apparently to keep him under some control, the District staff isolated him more and more in a

one-to-one setting with, for the most part, non-credentialed aide support rather than a credentialed classroom teacher and he was kept at school, isolated and alone with, for the most part, a non-credentialed teacher when the rest of the class went on community outings. Decs., page 3, lines 24-28. The family was not provided with type of team meetings that had been promised, and were not provided with the type of involvement that had been promised. Decs., page 6, lines 10-13.

The final blow to the family's trust came when H.B. came home from school with finger marks on the top of his ears and a second time with finger marks visible on his upper arms where he had been held so tightly by someone at school that the finger prints were still visible when he was delivered home and bruises then developed.   Decs., page 5, lines 5-29.   When Penny B. attempted to obtain the attention of school personnel regarding the level of physical control that was obviously being used with H.B., she was unsuccessful.  Mary Schillinger did not return her call for an entire week. Decs., page 6, lines 1-2. When Ms. Schillinger did return the call, she was remarkably uninterested in what Penny B. had to say and did not even ask if there were photographs or indicate that she intended to do any further investigation of my complaint. Decs., page 6, lines 17-19.

Given that H.B. was being physically contained in a manner that left bruises on his body and the District personnel, including Ms. Schillinger, appeared to have no concerns about that level of physical containment, H.B.'s parents had no alternative other than to remove him from the District program. Decs., page 6, lines 14-15. They did so and they placed him back in the Elliott Institute. Decs., page 6. lines 16 - 17.   While in the District's program, H.B. had become sullen and uninterested in attending school. He did not like going to the District classroom and he made that known to his parents in a variety of ways.  Within three days of returning to the Elliott Institute, he was again smiling and happy and anxious to go

to school.  Decs., page 6, lines 17-19.

H.B.'s parents wrote to various individuals within the District asking that the District recognize that the program it was providing could not, and did not, meet H.B.'s needs, that it was placing him in physical harm and asking that, as they knew the District had done for other children in similar situations, it agree to fund H.B.'s placement in a non-public school.  Decs., page 6, lines 20-26.  Not only did the District not even bother to respond to those letters from the parents,  through its attorney Mr. Weatherly, it again filed for due process against the family asserting that its program was an appropriate program for H.B. Decs., page 7, lines 1-3.

All of the family's financial resources and emotional energy were being used to try to provide H.B. with a placement from which he could recover from the harm he suffered in the District's program.  The family was devastated when, yet again, the District personnel ignored their concerns and filed against them for due process.  At that point, they had no option other than to respond to the District's filing and to file their own due process complaint against the District.  Decs., page 7, lines 7-10. However, given the strain the District was already causing the family through this on-going litigation and their limited financial resources, the family requested that their attorney attempt to resolve the matter without going through yet another hearing. Decs., page 7, lines 5-7.  Solely to avoid the emotional, physical and financial strain of another administrative hearing, the family felt they had no option other than to agree to the limited offer the District was prepared to make. Decs., page 7, lines 21-25.

Almost immediately after the agreement was signed, the actions of the District personnel again began to demonstrate their intention to assess H.B. with a team that included its outside experts,  Dr. B.J. Freeman and Dr. Mitchell Taubman so it could make a case that H.B. should be in the District's program. Decs., page 8 lines 14-17.

Just as in 2004, apparently solely because of a desire to "prove" H.B. should not be at the Elliott Institute but, rather, in a District classroom, the District is conducting lengthy assessments of H.B. and spending time observing him at the Elliott Institute. Just as before, it appears through the individuals hired to conduct the assessments and observations, Dr. Freeman and Dr. Taubman, there is a predetermined plan in place to assert that the District can provide an appropriate program for H.B. Decs., page 8, lines 23-26. Ms. Schillinger's self-serving declaration fails to advise the Court of these facts. Her statement that she would never again "predetermine" H.B.'s placement lacks any foundation or support given the District financial resources she has authorized, at a time of reduced funds for local educational agencies, to be spent to assemble a team of assessors under the direction of Dr. B.J. Freeman and Dr. Mitch Taubman to plan H.B.'s educational program for the 2008-2009 school year. Not only did H.B. suffer harm as a result of the District's illegal predetermination in June, 2004, it appears he is going to be subjected to the same thing all over again. Unfortunately for H.B. and his family, the underlying factual issue is beginning to recur.

### III

### THE CASE IS NOT MOOT

The District's first legal argument is that this matter is "moot." It argues that the case became moot at some unspecified time prior to this Court's Order on Remand of March 26, 2008 and the Court thereby lost subject matter jurisdiction making its Order only an advisory opinion if not a nullity. Opp. at page 1, lines 15-18. The District hurls these allegations without even bothering to provide a date certain as to when it asserts the Court lost jurisdiction.

When, as here, the action complained of is capable of repetition, the Court should not find it to be moot. *Honig v. Doe,* 484 U.S. 305, 108 S. Ct. 592 (1988).

It is clear from the District's position through the years as well as at present, that there exists a reasonable expectation that the issue presented by H.B. will repeat. Should this Court decline jurisdiction and vacate its Order on Remand, the issue will forever evade review simply due to the inherent mutability of H.B.'s or any child's educational program.

In view of the District's repetition of the patterns of behavior that led to this Court's Order on Remand finding that the District had denied H.B. a free appropriate public education by violating the IDEA, and the District's proffer of the quite false impression that H.B. and the District agree on all educational issues at this time,  this Court may understand that the issue of whether H.B. can receive from the District a free appropriate public education is ongoing.  This case is thus quite similar to the leading case of *Honig v. Doe, supra. Honig* was an expulsion case which took seven years to reach the Supreme Court.  By the time it did, "Student Smith" was 20 years old, no longer resided in the subject school district, was not attending school, and was not currently faced with any proposed expulsion or suspension proceedings.  *Id.* at 318.  Under these circumstances, the Supreme Court acknowledged the "capable of repetition, yet evading review" exception to mootness as requiring no more than a "reasonable expectation" of repetition.  The fact that Smith was not even attending school was irrelevant since Smith was within the age range protected by the IDEA and had been litigating his position for the seven years it had taken the case to reach the Supreme Court.

This Court has ample facts from which to infer that Mrs. B. and the District are currently, and will in the future, be engaged in creating and modifying H.B.'s educational program, and that she is not at all ready to forego the exercise of this right she has so diligently defended for years.  See, voluminous administrative, district court and appellate court records in this matter.

The legal authority upon which the District relies to try to support its claim that the *Honig* exception to mootness should not be applied in this case do not support its position.  The cases cited by the District involve situations where either: (1)  the student is no longer in the same school district; (2) the law had changed; (3) the error complained of was easily remedied by affirmative action on the part of the district; or (4) the progress of the student changed or his status as a student changed such that there really was no on going disagreement.  Not one of the cited cases is applicable to the instant situation.

In *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982), *Board of Education of Downers Grove Grade School District No. 58 v. Steven L.*, 89 F.3d 464 (7th Cir. 1996), *Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000) and the unreported case of *Los Angeles Unified School District v. D.L.*, 2008 WL 683392 (C.D. Cal. 2008), the individuals involved had all moved from a situation in which they would have been subjected to repeat conduct by the agency involved.  That is hardly the case for H.B.  He and his family reside in the Las Virgenes Unified School District and depend on that District for his educational program.  These cases do not support, and cannot support, a claim of mootness when it is undisputed that H.B. continues to be a student in the District.

In *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) and *S-1 and S-2 v. Spangler*, 832 F.2d 294 (4th Cir. 1987) the law changed while the matter was pending and therefore mooted each case.  There has been no change in law while this matter is pending that is relevant to the issues involved.

In *Stellato v. Board of Education of Ellenville Central School District*, 842 F.Supp. 1512 (N.D.N.Y. 1994) and *Lillbask ex rel. Mauclaire v. Connecticut Department of Education*, 387 F.3d 77 (2d Cir. 2005), the relief sought by the parents was obtained through affirmative action on the part of the District while the matter

was pending that effectively resolved the dispute between the parties leaving nothing to adjudicate. That is not the case here. The District cannot, and has not, taken any affirmative action to remedy the injury complained of. To the contrary, it has once again brought in the very same experts it has utilized each time H.B. is contesting the appropriateness of the program offered by the District and who have made it clear that their role is to bring H.B. back to the District.

The District also tries to support its argument with cases in which the circumstances of the child have changed so that there is no longer a disagreement between the parties. In *Department of Education v. Rodarte,* 127 F. Supp. 2d 1103 (D.Haw. 2000), the child had graduated as had the student in *Doe v. Marshall,* 622 F.2d 118 *(5th Cir.* 1980). That is certainly not H.B.'s position and, in any case, of course, as set forth below, in both of those cases the courts also held that determination of mootness did not preclude an award of attorney fees.

Apparently aware of the lack of support provided by the cases it cites, the District then asserts that any effort by H.B. to rely on a claim that the error complained of was capable or repetition as an exception to mootness must fail because the harm H.B. complains of is not of a substantive nature. In this Circuit, predetermination is every bit as important and significant as any alleged substantive violation. Indeed, this procedural protection is so important that once it is violated, it must be concluded that the student has been denied an appropriate educational program. *W.G. v. Board of Trustees of Target Range School District No. 23,* 900 F.2d 1479, 1485 (9th Cir. 1992). The District's notion that a violation of the prohibition against predetermination is a minor violation that must, by definition, be found to be incapable of repetition is simply not supported by either law or facts.

Numerous citations which are factually inapplicable, legally distinguishable, or incompletely described do not, and cannot, make the case before the Court

something it is not.   H.B.'s situation presents a case in which repetition of the complained of behavior is not only likely, it appears to be happening at this very moment.  To permit the District to evade review of its practices on a single statement from a single employee that she will not do it again is to deny H.B. the protections to which he is entitled under IDEA and to create a situation in which this very same issue is likely to be back before the Court in the future.  *Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 221, 120 S.Ct. 722, 725 (2000).

## IV

**PLAINTIFFS' MOTION FOR FEES AND COSTS SURVIVES EVEN IF THE CASE IS MOOT IN THAT THIS COURT HAS INDEPENDENT JURISDICTION OVER THE MOTION PURSUANT TO 20 U.S.C. § 1415(i)(3).**

In arguing that H.B.'s Motion is moot and that therefore this Court lacks subject matter jurisdiction over that Motion, the District fails to apprise this Court of the actual law.  Even when a matter is moot, if there is an independent basis for jurisdiction over attorney fees and costs, the Court retains such jurisdiction.  Jones, Rosen, Wegner and Jones, Rutter Group Practice Guide: Federal Civil Trials and Evidence (The Rutter Group 2007) at 19:301 *et seq.*  In this case, this Court has subject matter jurisdiction over the Motion independent of any other claims or issues which the student or parent may have, as a part of the statutory jurisdiction bestowed by Congress in 20 U.S.C. § 1415(i)(3)(B):

> In any action or proceeding brought under this section, the court, in its discretion may award reasonable attorneys' fees as part of the expenses to the parents or guardians of a child with a disability who is the prevailing party.

11

20 U.S.C.§ 1415(i)(3)(B)

This comports with the statutory intent to provide parents with substantive rights and the civil procedures available to enforce them. These rights and procedures include the right to attorneys' fees and costs, and the procedures to either file a separate action or make a motion pursuant to the statute to secure the right. *Barlow-Gresham Union High School District No. 2 v. Mitchell*, 940 F.2d 1280, 1286 (9th Cir. 1991) ["Clearly, the congressional intent with regard to the EHA and the HCPA was to provide parents of handicapped children a substantive right that could be enforced through the procedural mechanisms in the Act, including a right to attorneys' fees if the parents prevail."].  Under the IDEA's statutory scheme, (20 U.S.C. §§ 1400 *et seq.*) an action for attorney's fees is explicitly distinct from the administrative review process, and fees may be awarded long after an action is mooted or finally decided. *Ostby v. Oxnard Union High*, 209 F. Supp. 2d 1035, 1043 (C.D. Cal. 2002); *Prescott v. Palos Verdes Peninsula Unified School District*, 659 F.Supp. 921 (C.D. Cal. 1987).

A comparison of 20 U.S.C. § 1415(i)(2), which provides federal jurisdiction for the appeal of a state administrative decision, with 20 U.S.C. § 1415(i)(3), which creates an independent federal cause of action for attorneys' fees illustrates the unique nature of the IDEA statutory scheme which provides attorneys' fees as a substantive right to a prevailing parent, which may not arbitrarily be denied, and which survives the end of the underlying litigation.  In the present case, H.B. chose to file a motion instead of needlessly filing a second action and having it low-numbered to this Court. Either way, this Court retains independent subject matter jurisdiction over the issue of attorneys fees and costs incurred by the prevailing parent. 20 U.S.C. § 1415(i)(3).

That independent jurisdiction lies for the issue of fees and costs for a prevailing parent is settled law outside of the Ninth Circuit as well.  *C. v. Plainfield Board of Education*, 382 F.Supp. 2d 347 (D.C.Conn. 2005); *Robert D. v. Sobel*, 688 F.Supp.

861 (S.D.N.Y. 1988); *Combs by Combs v. School Board*, 15 F.3d 357 (4th Cir. 1994); *Duane M. v. Orleans Parish School Board*, 861 F.2d 115 (5th Cir. 1988); *Curtis K. v. Sioux City Community School District*, 895 F. Supp. 1197 (N.D.Iowa 1995).

Moreover, in at least two of the cases cited by the District to support its claim of mootness, the courts held that there was independent jurisdiction as to the attorneys fees and costs that survived a finding of mootness. *Doe v. Marshall, supra; Department of Education v. Rodarte, supra.*

It also must be remembered that there is a separate and distinct statute of limitations governing a motion for attorneys' fees and costs. In interpreting the congressional intent to recompense prevailing parents the attorneys fees and costs expended in pursuing or defending an educational program for a disabled child, the rule within the Ninth Circuit states that a prevailing parent's attorneys' fees and costs claim survives three years after a final determination of the child's case. In *Ostby v. Oxnard Union High*, 209 F. Supp.2d (C.D.Cal. 2002), parents brought a timely claim for attorney's fees under 20 U.S.C. § 1415(i)(3)(B) two years and three hundred sixty four days after signing a settlement agreement regarding the child's rights and the school district's responsibilities under 20 U.S.C. § 1400 *et seq*. Because the IDEA does not provide a statute of limitations for the attorneys fees and costs provisions, the federal court looked to an analogous state limitations statute. The court adopted the three-year statute of limitations imposed upon actions arising from statutory rights found in Cal. Code of Civ. Proc. § 338(a) as most consistent with the right granted by the IDEA. *Ostby v. Oxnard Union High*, 209 F. Supp.2d 1035 (C.D.Cal. 2002). The following cases demonstrate the uniformity this rule has obtained within the Ninth Circuit district courts: *Brandon E. v. Dep't of Educ.*, 2008 U.S. Dist. LEXIS 15755 (D. Haw. Feb. 29, 2008); *K.D. v. Oakley Union Elem. Sch. Dist.*, 2008 U.S. Dist. LEXIS 9559 (N.D. Cal. Feb. 8, 2008) 234 F. Supp. 2d 1156 p.1158; and *Noyes*

1  *v. Grossmont Union High Sch. Dist.*, 331 F. Supp. 2d 1233, 1242 (S.D. Cal. 2004).

2  In not one of these cases did the court enter into an analysis that would have the

3  jurisdiction for a determination of attorneys' fees depend upon whether the

4  underlying educational claims had been mooted.  Rather, they follow *Ostby*'s

5  rationale and premise that the IDEA's attorneys' fees provision is independent of and

6  integral to the protective rights granted to students and parents under the IDEA, and

7  thereby survives the underlying action, whether it has been finally decided or mooted.

8

9              In addition, applying a longer limitations period to a claim

10             for attorney's fees promotes the policy embodied in the

11  IDEA of protecting the parents' right to be represented by counsel in seeking an

12  appropriate education for their child. See 20 U.S.C. § 1415(h) (guaranteeing parents

13  the right to be "accompanied and advised by counsel," as well as "the right to present

14  evidence and confront, cross-examine, and compel the attendance of witnesses.").

15  *Ostby,* at 1044.

16       This is the line of cases applicable to H.B.'s Motion and not the line of cases

17  cited by the District.  There is an independent basis for jurisdiction as to his attorney

18  fees and costs.  Given that, as set forth below, as the prevailing party, he is entitled

19  to all of the relief he seeks in his Motion.

20

21                                    **V.**

22                      **H.B. IS THE PREVAILING PARTY**

23       The prevailing party standard is unequivocally met in this case.  The Court's

24  Order on Remand completely reversed the August 30, 2004 Decision of the California

25  Special Education Hearing Officer, and unequivocally held that the District had

26  violated IDEA.  The Court granted all of the relief Plaintiffs sought and thus

27  "judicially sanctioned" a "material alteration of the legal relationship of the parties."

28  *Buckhannon Board and Care Home, Inc., et al. v. West Virginia Department of*

14

1   *Health and Human Resources, et al.*, 532 U.S. 598, 602-603; 121 S. Ct. 1835 (2001);

2   *Shapiro v. Paradise Valley Unified School District, No. 69*, 374 F.3d 857, 865 (9th

3   Cir. 2004).

4

5       The Order on Remand was just one of the prevailing orders H.B. received in

6   this litigation.   The other, of course was this Court's issuance of a preliminary

7   injunction forcing the District to continue to pay for The Elliott Institute for the 2004-

8   2005 and 2005-2006 school years and was a financial benefit to H.B.'s family of at

9   least $147,000.00.  Decs., page 15, lines 16-23.

10      A prevailing party for attorney's fees purposes is a party who has succeeded on

11  any significant issue in the litigation which achieved some of the benefit the party

12  sought in bringing suit. *Hensley v. Eckerhart,*  461 U.S. 424, 433, 103 S.Ct. 1933,

13  1939 (1983).  Plaintiffs' goals in this case, as set forth in the Complaint filed on

14  October 18, 2004 were twofold. In the First Claim for Relief, H.B. sought to overturn

15  the administrative hearing decision and in the Second Claim for Relief, H.B. sought

16  to maintain his placement at Elliott during the pendency of the matter.   Both goals

17  were achieved.  The Court's order of March 26, 2008 has reversed the administrative

18  decision.  The Court's Order Granting Motion For Preliminary Injunction of March

19  17, 2005,  provided H.B. with continued placement at Elliott. This is a case in which

20  the plaintiff has prevailed across-the-board.

21      The District's attempt to trivialize the Order Granting Preliminary Injunction

22  completely contradicts its argument to this Court at the time of that Motion.  It now

23  characterizes the Motion for Preliminary Injunction and the Court's Order as a non-

24  event and nothing more than "an automatic injunction."  But that is hardly what the

25  District said in the Opposition it filed to the Motion at the time it was heard.  At page

26  5 of its Memorandum In Opposition To Motion For Preliminary Injunction filed on

27  March 7, 2005, the District asserted and argued at length that the injunction sought

28

should be granted – if at all – only after application of a traditional temporary injunction analysis. It also asserted on that same page that, contrary to what it now asserts, that H.B. was ***not*** entitled to an "automatic" injunction.

Indeed, the District was correct. This was hardly an "automatic" injunction. The District fought hard to keep it from being granted and asserted to the Court that there were a variety of bases on which it should not be granted. To now characterize that dispute as a non-event not providing any relief for H.B. is the height of hubris.

As explained by *New Hampshire v. Maine,* 532 U.S. 742, 749-750, 121 S.Ct. 1808 (2001), the courts have fashioned the doctrine of judicial estoppel "'to protect the integrity of the judicial process,'. . . by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993). See also, *In re Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990) ["Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."]; *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953). If there is anything that leaps out from the District's position in this litigation and the Declaration of Ms. B. Filed herewith, it is that forcing the District to pay for two years at the Elliott Institute was, for this family, quite a "tangible" result.

The cases cited in the District's Opposition at pages 19-20 suggest to this Court that because H.B. failed to receive a significant damages award in this litigation that the recovery is only "nominal" and that they should therefore be denied attorneys fees. The sums the family obtained through the Preliminary Injunction for H.B. to attend Elliott for two years are hardly nominal. Decs., page 15, lines 19-23. It is simply not the law that attorney fees may only be granted when a student obtains monetary damages, nor could it be the law since monetary damages are generally not available for IDEA violations. *Witte v. Clark County School District,* 197 F.3d 1271 (9th Cir. 1999).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H.B. is also the prevailing party under the standards of the Ninth Circuit even if the District were correct, which it is not, and the matter were moot.  In *Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir. 1980), for example, plaintiffs obtained a preliminary injunction against police practices in San Francisco.  After four suspects were convicted and sentenced, the Ninth Circuit dismissed the appeal as moot and vacated the preliminary injunction, which occasioned a motion by the appellees in the district court for their attorney's fees.  *Id.* at 747.  The court  held that "[c]aims for attorneys' fees ancillary to the case survive independently under the court's equitable jurisdiction, and may be heard even though the underlying case has become moot."  *Id.* at 848.  *Williams* was followed in *Watson v. County of Riverside*, 300F.3d 1092, 1096 ( 9th Cir. 2002), which also involved a fee claim in a moot case. First, the court held that "[a] preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon [Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed. 2d 855(2001)]."   Consequently, unless the "early victory" of the preliminary injunction is vitiated by an eventual defeat  "on the merits," a preliminary injunction is sufficient for prevailing party status.  *Watson v. County of Riverside*, *supra*, at 1095-96. Second, the fee award in *Watson* was unaffected by the case having become moot.  With the exception of time spent responding to motions to intervene, the trial court had granted the plaintiff " his attorneys fees based on **all** of the time his lawyers spent on the case, not just the time allocable to the preliminary injunction."  *Id.,* at 1095.  The court responded to the defendant's contention "that the district court abused its discretion by awarding Watson attorney's fees for the time expended on claims that he ultimately lost, " *Id.*, at 1096, as follows:

Here, the district court did not err in ruling that Watson's claims all

involved the same conduct and were sufficiently related to one another to entitle him to fees for all the work performed. Likewise, the district court did not abuse its discretion in ruling that the fees requested were not out-of-whack with Watson's level of success in the action. ... [I]t was within the district court's discretion to award all fees, rather than only those incurred up to the date of the preliminary injunction. The court did not abuse its discretion in its calculation of the fee award.

*Id.*, at 1096- 97.

Finally, in still another case involving mootness and an attorney's fees claim, *Sole v. Wyner*, ___ U.S.____, 127 S.Ct. 2188, 2196, 167 L.Ed.2d 1069 (June 4, 2007), the Supreme Court explicitly agreed with the *Watson* court's reasoning at 300 F.3d 1096 that a plaintiff who " 'secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her]," has "[won] a battle but los[t] the war.'" Then, in a passage that is a death knell to the District's mootness strategy, the Supreme Court expressly limited its holding to cases in which a plaintiff who had obtained a preliminary injunction ultimately loses the case on the merits.

"We are presented with, and therefore decide, no broader issue in this case. ¶ "We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees. We decide only that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her."

*Id.*, at 2196.

The result of the *Sole* Court's explicit tailoring of its holding is that the law that controls the facts at bar is that set forth in *Watson, supra.* In the instant case, H.B.

has obtained substantial relief, his case is not moot, and even if it were, he has obtained the relief of the type that makes him a prevailing party. The District can cite no applicable authority to the contrary; its effort to avoid the costs associated with its behavior by now claiming mootness is insufficient to provide the relief it seeks.

## VI.

### THERE IS NO BASIS FO REDUCING THE FEES SOUGHT BY H.B.

Plaintiffs received all the relief they sought in this litigation. Although they are identified as "plaintiffs" at this stage of the proceedings, H.B. and Penny B. Are actually defendant-appellants. It was the District who filed for due process in this case, arguing that they had offered a free appropriate public education to H.B. And it was the District that refused to resolve the matter early on by simply adding five hours of time to its transition plan to permit Dr. Elliott to visit with the classroom teacher to whom H.B. was going to be assigned when he returned to the District's program. Decs., page 10, lines 23-28.

The Order on Remand finds that Penny B. was denied meaningful participation in the IEP process, and that such a denial was a violation of the IDEA. As discussed above and herein, the result H.B. obtained is not at all "de minimis," nor is it as the District would like to portray it, a "limited" success. The District filed a due process complaint seeking to find that it had complied with the procedural and substantive provisions of IDEA and offered H.B. an appropriate program in its June 4, 2004 IEP. It has failed to do so because this Court has twice determined that it failed to comply with IDEA in making its offer and thereby denied H.B. an appropriate educational program in the June 4, 2004 IEP and H.B.;s position from the beginning of this litigation has been completely vindicated.

It was not, contrary to what the District seems to want the Court to believe, H.B. who filed for due process and made what it asserts, without citation to any part of the record, were "55" claims. It was the District who filed and made the assertions. All H.B. did was defend and assert that the District's IEP did not provide him with an appropriate program and did not take into account information from individuals familiar with H.B. and his needs. See, Declaration of Valerie Vanaman, Decs, page 11, lines 11-17. H.B. completely prevailed when the Court ruled that he had been denied an appropriate educational program through the District's predetermination. It is impossible to understand how the District can, with integrity, claim that H.B. did not prevail in this action.

For the District to further argue that Penny B. protracted this litigation is the height of hubris. It is interesting to note that the District provides absolutely no case law to support its argument that a parent's attorneys fees under the IDEA should be reduced for protracting the litigation. This may be because parents, like Penny B., as she states in her Declaration at Decs., page 6, lines 20-27, are usually very motivated to end any litigation regarding their child's education. There is no evidence in the record to suggest that Penny B. in any manner, did anything to protract this litigation. To the contrary, before the start of the administrative hearing, she attempted to resolve the matter on terms that would have, at most, cost the District two or three thousand dollars for Dr. Elliott's time and it was the District who summarily rejected any compromise in favor of paying its attorneys and expert witnesses hundreds of thousands of dollars and ultimately H.B.'s attorneys as well.

Moreover, if the District wished to avoid prolonging the matter and honestly believed its argument as to mootness, it could have taken action to stop the proceeding well before now. It did not – apparently hoping that it would prevail on the merits. Having failed on the merits, it now seeks to punish H.B. and his family

1
2
3
further by the absurd claim that they prolonged the matter.  There is absolutely no support for such a claim and the District knows it.

4
5
**CONCLUSION**

6
7
8
9
10
11
12
For the foregoing reasons, the arguments in the Opposition filed by the District to the Motion for Attorneys Fees and Costs should be rejected and H.B.'s Motion should be granted in its entirety.  H.B. and his family have defended his rights to an appropriate educational program before the California Special Education Hearing Office, this Court, in the Ninth Circuit, and in this Court for a second time.  Their victory is complete, and the fees and expenses sought are easily proportionate to the protracted nature of this litigation orchestrated and driven by the District.

13
14
DATED: May 5, 2008                    Respectfully submitted,

15
NEWMAN.AARONSON.VANAMAN

16
17
18
By _____

19
Valerie Vanaman

20
Attorneys for H.B. and Penny B.

21
22
23
24
25
26
27
28

1  VALERIE VANAMAN, SBN 42406
   GEORGE D. CROOK, SBN 60889
2  **NEWMAN AARONSON VANAMAN**
   14001 Ventura Boulevard
3  Sherman Oaks, CA 91423
   Telephone: (818) 990-7722
4  Facsimile: (818) 501-1306

5  Attorneys for Plaintiffs
   H.B., by and through his Guardian
6  Ad Litem PENNY B.; PENNY B.

7

8                  **UNITED STATES DISTRICT COURT**
9                  **CENTRAL DISTRICT OF CALIFORNIA**
10                         **WESTERN DIVISION**
11

12

13  H.B., by and through his Guardian Ad      ) CASE NO. CV 04-8572 FMC (SSx)
    Litem PENNY B.; PENNY B.,                 )
14                                            ) **PROOF OF SERVICE OF**
                    Plaintiffs,               ) **PLAINTIFF'S REPLY**
15                                            ) **MEMORANDUM OF POINTS**
    vs.                                       ) **AND AUTHORITIES IN**
16                                            ) **SUPPORT OF MOTION FOR**
                                              ) **ATTORNEYS' FEES AND**
17  LAS VIRGENES UNIFIED SCHOOL               ) **COSTS; and SUPPORTING**
    DISTRICT, ET AL.,                         ) **DECLARATIONS**
18                                            )
                    Defendants.               ) DATE: May 12, 2008
19                                            ) TIME: 10:00 A.M.
                                              ) CTRM: 750
20

21       I am employed in the county of Los Angeles, State of California. I am over the

22  age of 18 and not a party to the within action; my business address is 14001 Ventura

23  Boulevard, Sherman Oaks, California 91423.

24       On May 5, 2008, I served on defendant the documents listed hereinbelow:

25       1.    Plaintiffs' Reply Memorandum of Points and Authorities in Support of

26  Motion for Attorneys' Fees and Costs;

27       2.    Declaration of George D. Crook in Support of Plaintiffs' Reply to

28  Defendant's Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs;

1    3.    Declarations of Penny B., Valerie Vanaman, and Alicia Elliott in Support

2 of Plaintiffs' Reply Memorandum of Points and Authorities in Support of Motion for

3 Attorneys' Fees and Costs;

4         Said documents were served on defendant in this action by placing true

5 copies thereof enclosed in sealed envelopes addressed as follows:

6                          **HOWARD J. FULFROST**
                    **FAGEN FRIEDMAN & FULFROST LLP**
7                      **6300 Wilshire Blvd., Suite 1700**
                        **Los Angeles, CA 90048**
8    Service was effected by mail as follows in the following manner:

9 I deposited such envelope in the mail at Los Angeles, California.  The envelope

10 was mailed with postage thereon fully prepaid.

11    I declare under penalty of perjury under the laws of the United States of

12 America that the above is true and correct.

13    Executed on May 5, 2008, at Sherman Oaks, California..

14

15

16                                        John W. Chan

17

18

19

20

21

22

23

24

25

26

27

28