1  VALERIE VANAMAN, SBN #42406
   vvanaman@navlaw.net
2  GEORGE D. CROOK, SBN #60889
   latrobonus@gmail.com; gcrook@navlaw.net
3  **NEWMAN.AARONSON.VANAMAN**
   14001 Ventura Boulevard
4  Sherman Oaks, CA 91423
   Tel. (818) 990-7722
5  Fax (818) 501-1306

6  RICHARD M. PEARL, SBN #46351
   rpearl@interx.net
7  **LAW OFFICES OF RICHARD M. PEARL**
   1816 Fifth Street
8  Berkeley, CA 94710
   Tel. (510) 649-0810
9  Fax (510) 548-5074

10 Attorneys for Plaintiffs

11
                    **UNITED STATES DISTRICT COURT**
12
                   **CENTRAL DISTRICT OF CALIFORNIA**
13

14 H.B., by and through his Guardian Ad      ) CASE NO. CV 04-8572 CAS (SSx)
   Litem PENNY B.; PENNY B.,               )
15                                          ) **DECLARATION OF GEORGE D.**
                              Plaintiffs,   ) **CROOK IN SUPPORT OF**
16                                          ) **PLAINTIFFS' NOTICE OF**
   vs.                                      ) **MOTION AND MOTION FOR**
17                                          ) **LIFTING OF STAY AND FOR**
   LAS VIRGENES UNIFIED                     ) **DETERMINATION OF**
18 SCHOOL DISTRICT; CALIFORNIA              ) **PREVIOUSLY FILED MOTION**
   SPECIAL EDUCATION HEARING                ) **FOR ATTORNEYS' FEES AND**
19 OFFICE,                                  ) **COSTS**
                                            )
20                            Defendants.   ) [Notice of Motion and Motion;
   _____ ) Memorandum of Points and
21                                            Authorities in Support Thereof filed
                                              concurrently herewith under separate
22                                            cover]

23                                            Date:    September 13, 2010
                                              Time:    10:00 a.m.
24                                            Courtroom: 5

25 ///

26 ///

27 ///

28 ///

                                    1

# DECLARATION OF GEORGE D. CROOK

I, GEORGE D. CROOK, declare:

1.      I am an attorney in the firm of Newman.Aaronson.Vanaman, attorneys for Appellees Penny B. and H.B., a minor, by and through his mother and guardian ad litem, Penny B ("Appellees")  I am admitted to practice before the bar of this Court.  I make this declaration in support of Plaintiffs' motion to lift the stay previously imposed on Judge Cooper's October 21, 2005 fee order and for determination of the second motion for attorneys' fees and costs filed by Plaintiffs on April 21, 2008.  I have personal knowledge of the matters set forth herein.

## My Background

2.      I graduated from St. John's Seminary College in Camarillo, California in 1964.  I then taught at Salesian High School in East Los Angeles from 1964 to 1971.  Between 1969 and 1971, I was in charge of Salesian's college placement program, which became well known on the East Side of Los Angeles for its success in placing inner-city students in four-year colleges and universities with significant financial aid.  I left Salesian to go to law school in September, 1971.

3.      Between 1971 and 1974, I attended Loyola University of Los Angeles School of Law.  I graduated *cum laude*, was on the Dean's List all three years, was research assistant to Professor and then Dean, Frederick J. Lower, Jr., was a member of the Sir Thomas More Law Honor Society each semester, was first a staff member and then the Managing Editor of the Loyola of Los Angeles Law Review and published an article therein at 6 Loyola Law Review 526 (1973) entitled *You May Kill But You Must Promise Not To Use Discretion*.

4.      Following my graduation from Loyola in 1974, I was a law clerk to the Honorable Albert Lee Stephens, Jr., who was the Chief Judge of the United States District Court for the Central District of California.  When my term ended in September of 1975, I went to the then "silk stocking" but no longer existing firm of

Kindel and Anderson, where I practiced civil litigation.  I did not like the big firm environment, and I left Kindel and Anderson in February, 1977 to become a Clinical Professor of Law at Loyola of Los Angeles School of Law.  At about the same time, in March, 1977, I was elected to the Board of Trustees of the El Rancho Unified School District in Pico Rivera, California.  I served as a school board member there from 1977 until I resigned in 1986 because I was moving out of the jurisdiction.  I was twice elected President of the El Rancho School Board.

5.     My duties as a Clinical Professor at Loyola consisted of training law students who were staffing for academic credit the equivalent of a legal aid office located in the Pico-Union district of Los Angeles.  I supervised the students in the full spectrum of litigation practice, including discovery, actual trials and appeals.  By December, 1978, Loyola was in the process of determining that the clinic was not economically viable because of the relatively small number of students who could benefit from it, and I returned to private practice.

6.     In 1982, I joined the predecessor to what became known as the firm of Wilner, Klein & Siegel, where I was in charge of training and supervising the firm's approximately ten associates.  I left that firm in May, 1991 as one of the founders of the firm of Kehr, Crook & Fox.  While there I continued to practice civil litigation in state and federal court and, as in my previous firm, was in charge of training and supervising the young lawyers.  I left Kehr, Crook & Fox on December 31, 1998 to take a full-time position with Newman Aaronson Vanaman ("NAV") because I wanted to practice public interest law.

7.     Since joining NAV, I have represented clients at dozens of due process mediations under the Individuals With Disabilities Education Act, 20 U.S.C. §1400 et seq. ("IDEA").  I have also tried at least six due process hearings under the IDEA to completion and have prevailed outright in five of them and in part in the sixth.  I was also the attorney for the successful appellants in *Gulbrandsen v. Conejo Valley*

DECLARATION OF GEORGE D. CROOK IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LIFTING OF STAY AND FOR DETERMINATION OF PREVIOUSLY FILED MOTION FOR ATTORNEYS' FEES AND COSTS

1  *Unified School District,* CV 00-7418 AHM and the primary attorney for the

2  successful appellants in *J.M. v. Los Angeles Unified School District,* CV 02-5524

3  AHM (Cwx), in both of which the United States District Court reversed

4  administrative decisions against my firm's clients.  I also successfully defended or

5  directed the defense of appeals brought by school districts in *Pleasant Valley Unified*

6  *School District v. C.R.,* CV 99-03888 ABC (RNBx), *Los Angeles Unified School*

7  *District v. California Special Education Hearing Office, etc.,* Case No. SACV 03-

8  662-JVS (Ctx) and *Antelope Valley Union High School District v. B.F., et al.,* CV 06-

9  1539 CAS (JTLx).

10      8.    I am ranked as "AV" by Martindale-Hubbell as a result of its "peer

11  review" evaluation process, which consists of a survey of lawyers in the community

12  who have litigated against or are otherwise familiar with the rated attorney.  This

13  ranking "shows that a lawyer has reached the height of professional excellence.  He

14  or she has usually practiced law for many years, and is recognized for the highest

15  level of skill and integrity."  (*Martindale Hubbell Peer Review Ratings* as revealed

16  by Internet search on August 6, 2005).

17                         **The Record Relevant To This Motion**

18      9.    I have attached to this declaration true and correct copies of the

19  documents from the Court's file listed below to assist the Court in reviewing the

20  history of this motion:

21          A.    **Exhibit "A"**:  Judge Cooper's August 22, 2005 Order ruling

22                that the June 2, 2004 IEP which is the subject matter of this

23                action had been predetermined by Defendant Las Virgenes

24                Unified School District ("the District") and that therefore H.B.

25                had not been offered a FAPE.

26          B.    **Exhibit "B"**:  Defendant's Notice of Appeal of September 19,

27                2005, appealing Judge Cooper's August 22, 2005 Order.

28

C.   **Exhibit "C"**:   Judge Cooper's October 21, 2005 Order awarding Plaintiffs their reasonable attorneys' fees and costs in the sum of $335,112.79 and staying execution thereon pending the District's appeal to the Ninth Circuit.

D.   **Exhibit "D"**:   The Ninth Circuit's July 3, 2007 Order remanding the case to Judge Cooper with instructions to conduct an evidentiary hearing

E.   **Exhibit "E"**:   Judge Cooper's March 26, 2008 Order on Remand determining that "before the IEP meeting began, the District was not willing to consider alternative placements for the student" and that Judge Cooper did "not believe the testimony of the District representatives to the contrary," and finding "by a preponderance of the evidence that H.B.'s placement was predetermined and, accordingly, the procedural requirements of the IDEA were violated."

F.   **Exhibit "F"**:   Judge Cooper's June 13, 2008 Order holding in abeyance Plaintiffs' second fee motion, filed April 21, 2008, to obtain the fees Plaintiffs' attorneys incurred in the Ninth Circuit on the District's first  appeal and in the district court in connection with the evidentiary hearing on remand.

G.   **Exhibit "G"**:   The March 11, 2010 Memorandum of the Ninth Circuit affirming Judge's Cooper's March 26, 2008 decision and stating that "the procedural requirement of the IDEA were violated, and the hearing officer's decision was properly reversed."

H.   **Exhibit "H"**:   The Ninth Circuit's June 1, 2010 Mandate to this Court.

**My Hourly Rates**

10.    I am familiar with the rates charged by lawyers in the Los Angeles area with skills and backgrounds comparable to my own for performing comparable work.  The $650.00 per hour I am requesting for my time in the preparation of this motion is in line with the rates prevailing in Los Angeles for the kind and quality of the services I have performed.  In fact, my rate is conservative: lawyers of comparable experience and attainment often charge more than $700.00 per hour for comparable work.

11.    The courts have frequently found my requested rates reasonable. Most recently, in this Court, on April 13, 2007,  I was awarded fees at the rate of $525.00 an hour in *Antelope Valley Union High School District v. B.F., et al.,* CV 06-1539 CAS (JTLx). On November 10, 2008, I was awarded fees at the rate of $575.00 an hour in *Torrance Unified School District v. McGee*, CV-07-2164 CAS (RZx).  (True and correct copies of these orders are attached hereto as Exhibits "I" and "J.")

**NAV's Time And Expense Records**

12.    Attorney and paralegal time in our office is recorded manually and then placed in a computer program at appropriate intervals.  The same is true of expenses.

13.    As in all of our firm's billings in which I am involved, I have reviewed and edited all of the time and expenses my office has expended in this matter to avoid duplication and unreasonable expenses.  Exhibit "K" is an accurate record of the services that Ms. Vanaman, Ms. Robinson, Mr. Tovmassian and I, as well as paralegal John Chan, have performed in connection with this motion, and, I can and do attest that all of that time was reasonably directed to thinking through and preparing it.

14.     The $170.00 hourly rate of our paralegal, John Chan, is reasonable.  I know that Mr. Chan graduated from the paralegal program at UCLA in 2002. I am familiar with the hourly rates generally charged for paralegals in the Los Angeles area,  and the $170.00 hourly rate sought herein for Mr. Chan's services is well within the norm.

15.     The total fees and costs claimed by NAV for this motion is $15,876.60:

| | |
|---|---|
| John Chan | $170.00 |
| George Crook | $650.00 |
| Sharon Robinson | $500.00 |
| Henry Tovmassian | $550.00 |
| Valerie Vanaman | $650.00 |

16.     On July 15, 2010, I proposed to Mr. Weatherly, the District's attorney, that Plaintiffs would be willing to waive their fees for this motion if the District would agree to comply with the October 21, 2005 Fee Order and agree that the April 21, 2008 fee motion could now be determined without additional briefing.  I have not yet received a response from the District.

17.     Finally, I have calculated the accrued interest on Judge Cooper's October 21, 2005 Order and on Plaintiffs' April 21, 2008 fee motion as follows:

(a)     Judge Cooper's October 21, 2005 Order.  Pursuant to 28 USC §1961, I determined that the average Treasure yield for October 2005 was 3.76%. Using that interest rate, and compounding annually, I then arrived at the following interest figures:

(1)     10/22/05-10/21/06 - $12,600.24;

(2)     10/22/06-10/21/07 - $13,074.01;

(3)     10/22/07-10/21/08 - $13,600.11;

(4)     10/22/08-10/21/09 - $14,076.96;

DECLARATION OF GEORGE D. CROOK IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LIFTING OF STAY AND FOR DETERMINATION OF PREVIOUSLY FILED MOTION FOR ATTORNEYS' FEES AND COSTS

1     (5)   10/22/09-7/20/10 - $11,361.26.

2     Adding (1) - (5) together, I arrived at a total interest figure of $64,712.58 for

3 the period from October 22, 2005 through June 20, 2010.  Adding the accrued

4 interest of $64,712.58 to Judge Cooper's award of $335,112.79, I arrived at the

5 total figure of $399,825.37, identified in subsection (a) of section V of Plaintiffs'

6 motion.  Using the 3.76% rate, I also calculated a daily rate of 34.52 for the period

7 from June 21, 2010 through payment.

8     (b)   <u>Plaintiffs' April 21, 2008 Fee Motion</u>.  Pursuant to 28 U.S.C.

9 §1961, I also determined that the average Treasure yield for March 2010, during

10 which month the Ninth Circuit issues its Memorandum affirming Judge Cooper's

11 March 26, 2008 decision, was .146%.  Using that interest rate, I then arrived at the

12 figure of $222.61 for accrued interest from March 11, 2010 through July 20, 2010.

13 Using the .146% I also calculated a daily rate of $1.69 for the period from June 21,

14 2010 through payment.

15     I declare under penalty of perjury under the laws of the United States of

16 America that the foregoing is true and correct.

17     Executed on July 20, 2010, at Sherman Oaks, California.

18

19                   /s/ George D. Crook

20                   George D. Crook

21

22

23

24

25

26

27

28

DECLARATION OF GEORGE D. CROOK IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LIFTING OF STAY AND FOR DETERMINATION OF PREVIOUSLY FILED MOTION FOR ATTORNEYS' FEES AND COSTS

**EXHIBIT A**



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| H.B. by and through his Guardian Ad Litem P.B; P.B., | ) | CV 04-8572 FMC (Ssx) |
| | ) | |
| Plaintiffs, | ) | **ORDER REVERSING DECISION OF HEARING OFFICER** |
| | ) | |
| vs. | ) | **ORDER FINDING MOOT DEFENDANTS' MOTION TO STRIKE** |
| LAS VIRGENES UNIFIED SCHOOL DISTRICT, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Plaintiffs' Complaint for Violations of the Individuals with Disabilities Education Act and Defendants' Motion to Strike the Declaration of Alicia Elliott (docket no. 30). This matter has been fully briefed, and the Court has read and considered Plaintiffs' and Defendants' opening and reply briefs, in addition to the moving and opposition documents submitted in connection with the motion to strike. For the reasons and in the manner set forth below, the Court hereby **REVERSES** the decision of the Hearing Officer rendered in connection with this matter. The Court, finding the Motion to Strike moot, does not rule on

1

it.

# I. Background

H.B. is a twelve-year old boy who resides in the Defendant Las Virgenes Unified School District ("District"). H.B. suffers from autism. As part of his autism, H.B. has deficits in the areas of gross motor, fine motor, cognition, speech and language, social and emotional functioning, self-help skills, and behavior. H.B. is qualified as a disabled student under the Individuals with Disabilities Education Act ("IDEA") and California Education Code § 56030.5. Consequently, the District is required by IDEA and California law to provide Howard a free appropriate public education ("FAPE").

Currently, H.B. attends the Elliott Institute in La Crescenta, California, pursuant to a settlement agreement between Plaintiffs and Defendants and this Court's stay put order of March 16, 2005. On September 17, 2002, the parties agreed that H.B. would attend the Elliott Institute for the 2002-2003 school year. The agreement also provided for prospective and compensatory education services (such as speech and language services, occupational therapy services, and behavior intervention services) that would be provided to H.B. during the 2003-2004 school year and extended school year, in the event that Howard attended the Elliott Institute during the 2003-2004 school year.

During these years, H.B. underwent several assessments to measure his progress. On October 22, 2002, H.B.'s parents received notice that Dr. Diane Ashton would coordinate, collaborate, and participate in H.B.'s assessment. Dr. Ashton assessed H.B. over several days and generated an eleven-page report. However, in June 2003, the District, unsatisfied with the assessment,

2

expressed the need for further assessment. It was looking for an "accurate assessment" and believed that Dr. Ashton's assessment was inconsistent in reporting H.B.'s then present levels and abilities. H.B.'s parents objected to further assessment of H.B. They believed that the decision to re-assess H.B. was "unilateral" on the part of the District, and that the District selected an expert to assess H.B. solely for the purpose of "challenging the requests of parents." In other words, they believed the District did not want H.B. to attend the Elliott Institute any longer, and that the District's experts were hired to express the opinion that H.B. should attend a District school.

At an August 2003 meeting regarding H.B.'s Individualized Education Program ("IEP"), the District reiterated its desire for re-assessment of H.B.. It requested H.B.'s parents' permission to conduct additional assessments of H.B. H.B.'s parents refused. The IEP team also discussed transferring H.B. from the Elliott Institute to a special day class at Lupin Hill Elementary School ("Lupin Hill") within the District. The District believed that H.B. would have opportunities to interact with typical peers at Lupin Hill. H.B.'s parents expressed their desire that H.B. stay at the Elliott Institute. His parents felt that the District was unable to provide services for H.B. and that they could not place confidence in District personnel.[1] H.B.'s father stated that he believed the only reason the District wanted H.B. to attend a District school was because the services provided at the Elliott Institute were costly.

Eventually, after the District requested a due process hearing seeking an order allowing it to assess H.B., the parties entered into a settlement allowing further assessment of H.B. The District claimed that under the

---

[1]The District has previously failed in providing services to H.B. Before he began to attend the Elliott Institute, H.B. was a student at Willow Elementary School in the District and evidently suffered from severe behavioral problems.

3

1   September 17, 2002 settlement agreement, it was not obligated to fully fund
2   H.B.'s education at the Elliott Institute, and it ceased funding H.B.'s
3   classroom time.  Ultimately, H.B. stayed and was funded at the Elliott
4   Institute during this time pursuant to a stay put order.
5       The additional assessments were conducted in May 2004.  H.B.'s
6   behavior assessment was conducted by Dr. Mitch Taubman of the Autism
7   Partnership.  He reviewed H.B.'s educational records, discussed H.B. with
8   his mother, teachers and service-providers at the Elliott Institute, and
9   observed H.B. at home, at school and during his receipt of related services.
10  Dr. Betty Jo Freeman conducted H.B.'s psychological assessment.  In
11  conducting the assessment, she administered form assessment tools,
12  conducted observations at the Elliott Institute and at home, interviewed
13  H.B.'s mother, teachers and service-providers, and reviewed H.B.'s
14  educational records.  H.B.'s speech and language assessment, which included
15  observations at the Elliott Institute and the administration of assessment
16  tools, was conducted by speech and language pathologist Marian Peloquin.
17  Additionally, H.B. was administered an academic assessment by Curran
18  Cummings, a special education teacher at Lupin Hill, and an occupational
19  therapy assessment by therapist Joy Marman Guillory.
20      On or about Friday, May 28, 2004, the District faxed to H.B.'s
21  attorneys a copy of all the assessment reports.  On June 1, 2004, the District
22  faxed H.B.'s attorneys a copy of its proposed goals and objectives.  On June 2,
23  2004, H.B.'s IEP team convened to review the recent assessments and to
24  discuss his program for the 2004-2005 school year and extended school year.
25      At the meeting, they discussed the assessment of H.B. and potential
26  goals and objectives.  H.B.'s mother asked several questions during the
27
28                                  4

EXHIBIT A    12

1   meeting, and those questions were answered.  The District offered H.B. a

2   placement at Lupin Hill, with five hours of supervision of H.B.'s

3   "DTT/ABA" program[2] by a behavior support provider, one-to-one

4   instructional aide support during his transition and, as needed during the

5   remaining term of the IEP, ninety minutes per weeks of speech and language

6   services, ninety minutes per week of occupational therapy services, sixty

7   minutes per week of adaptive physical education, six consultations with a

8   clinical psychologist, extended school year services, transportation services,

9   and parent training and parent participation through "planning team

10   meetings" occurring at least once per month and daily communication logs.

11       Additionally, the District offered a plan to transition H.B. from the

12   Elliott Institute to Lupin Hill during the 2004 extended school year.  For the

13   first two weeks, H.B. would begin his day at Lupin Hill, attending from 8:00

14   am to 10:00 am, and then attend the Elliott Institute for the remainder of his

15   day.  For the next two weeks, he would attend Lupin Hill from 8:00 am to

16   noon, and then the Elliott Institute for the remainder of the day.  Then he

17   would attend only Lupin Hill.  He would be transported from Lupin Hill to

18   the Elliott Institute in one of two ways: either his mother would drive him

19   with the District reimbursing her for mileage, or the District would arrange

20   for a taxicab with a District staff member to accompany H.B.  The journey

21   would be approximately 30 miles and take approximately an hour.

22       At the meeting, there was little discussion about why Lupin Hill was

23   the appropriate placement for H.B. over the Elliott Institute.  H.B.'s mother

24   did not again raise her objection to H.B.'s placement in a school at the

25   District and her preference for the Elliott Institute.  Accordingly, the parties

26

27      [2]DTT/ABA is a particular type of instruction for individuals with autism.

28             5

1  did not discuss the advantages of a District placement over placement at

2  Elliott, and it is not clear why the District proposed H.B.'s transition away

3  from the Elliott Institute and to Lupin Hill.

4        Following the meeting, the IEP team agreed that the Elliot Institute

5  and H.B.'s parents could have until June 14 to review the goals and

6  objectives as amended during the discussions at the IEP meeting.  The team

7  agreed that, if the Elliott Institute staff had any questions or concerns about

8  the goals and objectives, they could notify the District of those questions or

9  concerns during that time and another IEP meeting could be convened.  No

10  additional input was given.  On June 4, 2004, a rosary service was held for

11  one of  H.B.'s teachers who had passed away, and on June 14, 2004, a

12  memorial service was held.  Personnel from the Elliot Institute did not have

13  the opportunity to speak with H.B.'s parents regarding his IEP until June 20,

14  2004.

15        On June 4 and16, the District sent H.B.'s parents letters reiterating

16  and clarifying the June 2 IEP offer to H.B. and requesting consent for the

17  IEP.  H.B.'s parents refused consent to the IEP.  The District requested a

18  special education due process hearing on June 22, 2004.

19        At the due process hearing, the Special Education Hearing Officer

20  ("Hearing Officer") found that the District's IEP offer provided H.B. with a

21  FAPE.

22        First, she found that the District had complied with the procedural

23  requirements of the IDEA.  Although Plaintiffs argued that the District had

24  violated the procedural rule that the District provide them with a "formal,

25  written offer of placement," the Hearing Officer disagreed.

26        Second, the Hearing Officer  found that the District had complied

27

28                      6

1  with the substantive requirements of the IDEA.  She concluded that the

2  assessments performed by experts from the District and H.B.'s parents

3  reached similar and accurate conclusions regarding H.B.'s cognitive skills.

4  Regarding H.B.'s behavior, she credited the District's witnesses on the

5  question of whether H.B. would suffer regression if transferred from the

6  Elliot Institute to Lupin Hill.  She reasoned that because the District's

7  witnesses were more familiar with the program at Lupin Hill, they were

8  better able to determine if H.B. would transfer successfully into that

9  program.  Regarding academics, the Hearing Officer concluded that the

10 parties generally agreed on H.B.'s current level of academic performance, and

11 that he faced difficulty with generalizing the skills he learned.  Regarding

12 speech and language, the District's general description of H.B.'s speech and

13 language skills was undisputed.  There was a dispute regarding whether H.B.

14 had apraxia,[3] but the Hearing Officer credited the testimony from the

15 District on this issue that he did not.  There was no substantial dispute

16 concerning H.B.'s social/emotional functioning, gross motor abilities, fine

17 motor abilities, or self-help skills.

18         Given the accurate and largely undisputed assessment of H.B.'s special

19 needs, the Hearing Officer concluded that the District's IEP offer, as

20 required by the IDEA, was reasonably calculated to provide H.B. with

21 educational benefit.  The Hearing Officer rejected Plaintiffs' argument that

22 the goals and objectives in the proposed IEP inappropriately identified H.B's

23 current level of performance.  She also concluded that the goals were not

24 overly focused on "functional skills" curriculum.  She reasoned that one

25 _____

26     [3]Apraxia is a problem in which the nerves in the brain have difficulty sequencing
   information and in which the muscles of the body are slow to react to the information

27 received.

28                                        7

1   purpose of the IDEA was to prepare students for independent living, and the

2   goals and objectives geared toward H.B.'s development of independent use of

3   functional skills were appropriate.  She also reasoned that the skills were

4   sufficiently challenging academically for H.B.  The Hearing Officer rejected

5   Plaintiffs' challenge that the goals and objectives were overly optimistic and

6   unintelligible.  The Hearing Officer was satisfied that H.B.'s proposed

7   teacher, Ms. Cummings, understood the goals and had a clear vision of how

8   to implement them.  Finally, the Hearing Officer rejected Plaintiffs'

9   argument that the goals and objectives were not written to be implemented

10  at home and in the community.  Although there is no legal requirement that

11  goals be so written, the goals and objectives proposed were transferable to

12  home and community environments.

13          The Hearing Officer also concluded that placement at Lupin Hill was

14  appropriate.  Plaintiffs argued that because H.B. suffers from severe behavior

15  problems, the Elliot Institute was more appropriate.  However, the Hearing

16  Officer credited the testimony from Ms. Cummings that she understood how

17  to implement H.B.'s behavior plan.  Plaintiffs also argued that Lupin Hill

18  did not offer sufficient individualized attention, but the Hearing Officer

19  disagreed.  The program at Lupin Hill would provide H.B. with one-on-one

20  instruction and a smaller student-teacher ratio than available at the Elliott

21  Institute.

22          Next, the Hearing Officer concluded that H.B.'s parents were

23  sufficiently involved in the proposed IEP.  H.B.'s parents argued that the

24  IEP did not provide sufficient involvement and failed to "rebuild trust

25  between [H.B.'s] family and the District."  The Hearing Officer found that

26  the plan called for substantial parental involvement, including regular

27

28                                    8

1   planning team meetings, parent training, and a parent/school

2   communication log. Additionally, the Hearing Officer found that Plaintiffs

3   had failed to (1) identify how parent trust could be rebuilt; (2) that the law

4   required the District to attempt to rebuild trust; or (3) that failure to rebuild

5   trust would result in the denial of a FAPE for H.B. The Hearing Officer

6   nevertheless concluded that "the District is approaching [H.B.'s parents]

7   with openness and is attempting to rebuild the trust between the parties."

8        The Hearing Officer found that the proposed IEP could be

9   implemented. Plaintiffs argue that Dr. Elliott, of the Elliot Institute, told

10  H.B.'s mother that the Elliot Institute would not allow H.B. to enroll part

11  time for purposes of implementing the transition plan. Concluding that this

12  testimony was hearsay, the Hearing Officer did not credit it. The Hearing

13  Officer concluded that otherwise, there was no evidence that H.B. could not

14  attend the Elliott Institute part time. Plaintiffs have now submitted a

15  declaration from Dr. Elliott, again stating that she would not admit H.B. part

16  time. She explains that there are limited spaces available for students at the

17  Elliott Institute, and that each space should go to a full-time student at the

18  beginning of the year. Any other arrangement would be disruptive to the

19  students. That declaration is the subject of Defendants' motion to strike.

20       Plaintiffs brought the instant complaint following the due process

21  hearing on October 18, 2004. Plaintiffs argue that the Hearing Officer's

22  decision was in error, and that the proposed IEP fails to comply procedurally

23  and substantively with the IDEA. They also argue that the IEP cannot be

24  implemented.

25                    **II. Standard of Review**

26       Under the IDEA, a district court "shall receive the records of the

27

28                                   9

administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). Thus, judicial review of IDEA cases is less deferential to the agency decision than judicial review of agency actions in other contexts. *Id.* Nevertheless, in "reviewing administrative decisions, 'courts must give due weight' to judgments of education policy." *Id.* at 1472 (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). While courts should not substitute their own judgment for that of the administrative agency, how much deference is due the agency decision is a matter of discretion. *Id.* at 1472-73; *see also Bd. of Education of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176 (1982). To determine how much weight should be given,

> [t]he traditional test of findings being supported by substantial evidence, or even a preponderance of the evidence, does not apply. This does not mean, however, that the findings can be ignored. The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole.

*Id.* at 1473 (quoting *Gregory K.*, 811 F.2d at 1311). Courts give the hearing officer's findings more deference when they are "thorough and careful." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995). Courts are not permitted simply to ignore the administrative findings. *Ojai*, 4 F.3d at 1472.f

10

### III. Discussion

The IDEA ensures that all disabled children receive a free appropriate public education ("FAPE") through IEPs. *See* 20 U.S.C. § 1400(c); *W.G. v. Bd. of Trustee of Target Range Sch. Dist.*, 960 F.2d 1479, 1483 (9th Cir. 1992). "The IEP, which is prepared at a meeting between a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and where appropriate, the child, consists of a written document containing" (1) a statement of the child's present levels of performance; (2) a statement of annual goals and short term objectives; (3) a statement of the services to be provided to the child; (4) the projected date for the initiation and duration of the services; (5) a statement describing how the child's progress will be evaluated. *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 182 (1982).

Substantively, the IDEA requires the State to "provide educational benefit to the handicapped child." *Id.* at 201. The education provided need not maximize the potential of the child or "produce any particular outcome." *Id.* at 192. "Congress did not impose upon the States any greater substantial educational standard than would be necessary to make" access to public schools "meaningful." *Id.* Rather, the "education to which access is provided [must] be sufficient to confer some educational benefit upon the handicapped child." *Id.* at 200. Therefore, IEP should be designed to confer such a benefit, and education the child actually receives should comport with the IEP. *See Rowley*, 458 U.S. at 188; 20 U.S.C. § 1401(18).

In addition to the substantive requirements, the IDEA imposes "extensive procedural requirements upon States receiving federal funds under its provisions." *Id.* Among those procedural requirements is the

11

1   requirement that parents be allowed meaningful input into the development
2   of the IEP. *W.G.*, 960 F.2d at 1483-1484.

3       Procedural flaws do not automatically require a finding of a denial of a
4       FAPE. However, procedural inadequacies that result in the loss of
5       educational opportunity or seriously infringe the parents' opportunity
6       to participate in the IEP formulation process clearly result in the
7       denial of a FAPE.

8   *Id.* at 1484 (citations omitted). In determining whether a child has been
9   provided with a FAPE, courts consider first whether the district has
10  complied with the procedural requirements of the IDEA and then whether it
11  has complied with the substantive requirements that the "individualized
12  education program developed through the [IDEA's] procedures [was]
13  reasonably calculated to enable the child to receive educational benefits."
14  *Amanda J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 890 (9th Cir. 2001).

15      Plaintiffs argue that H.B. is being denied a FAPE because his parents
16  were not given the opportunity to meaningfully participate in the
17  development if his IEP. Specifically, they argue that H.B.'s placement was
18  predetermined by the District to be Lupin Hill, as opposed to their preferred
19  placement at the Elliott Institute. In *W.G.*, the court held that when the
20  district assumes a "take it or leave it" posture at an IEP meeting and "no
21  alternatives" to the district-proposed program are discussed," a child may be
22  denied a FAPE. *W.G.*, 960 F.2d at 1484. If a district rejects or plans to reject
23  an alternative presented by the parents "regardless of any evidence
24  concerning [the student's] individual needs and the effectiveness of" the
25  program, this too may result in a procedural violation. *Deal v. Hamilton Cty.*
26  *Bd. of Educ.*, 392 F.3d 840, 857 (6th Cir. 2005).

27
28             12

1    In *Deal*, the court held that the district had an "unofficial policy of

2  refusing" the type of instruction the parents requested.  The parents

3  requested "Lovaas style ABA" services for their son, who suffered from

4  autism.  There was evidence that such instruction would benefit the student.

5  However, the school officials refused to consider it.  They told the parents

6  that they would like to give the student the requested service, but that they

7  could not because they "could not give the same to everybody." *Id.* at 855.

8  They had consistently refused to provide Lovaas style ABA services to other

9  students in the district, rejected the validity of the studies showing that type

10  of instruction to be effective, told the parents they could not ask questions

11  during the IEP meeting; investigated the parents' dispute with the IEP

12  without interviewing any Lovaas style ABA teachers; and denied the request

13  for Lovaas style ABA in part because they believed it to be a more expensive

14  approach. *Id.*  Further, the school officials had described the student's

15  private school program as a "sensitive case with regards to school program

16  and/or Lovaas," informed the parents that the "powers that be" were not

17  implementing Lovaas style ABA programs, and stated at the student's IEP

18  meeting that they "wished people would pay their taxes so that [the district]

19  could provide ABA" for the student.  Based on this and other evidence, the

20  court concluded that the parents' participation in the IEP process was not

21  meaningful.  The court reasoned, "[t]he district court erred in assuming that

22  merely because the Deals were present and spoke at the various IEP

23  meetings, they were afforded an adequate opportunity to participate.

24  Participation must be more than mere form; it must be *meaningful*." *Id.* at

25  858.  Just because the parents contributed to the descriptions of the student's

26  then present levels of performance and the stated goals and objectives did

27

28                                   13

1   not make the participation meaningful, if they did not contribute to "the

2   operative portions of the IEP." *Id.* Their opinions were not considered in

3   determining what services would be provided for the student. *Id.*

4          Here, Plaintiffs point to substantial evidence that the District

5   intended, from the time H.B. was placed at the Elliott Institute, to transfer

6   him back to the district. At an IEP meeting held in October, 2001, shortly

7   after H.B. began at the Elliott Institute, it was noted, "The IEP team agrees

8   to reconvene in April 2002 to discuss a transition plan back to District" and

9   "IEP team agrees to an observation at home and school in order to provide a

10  beginning of transition planning to return [H.B.] to District Program." This

11  was despite the progress H.B. had made while at the Elliott Institute and ther

12  recognition that private school placement had been necessary.

13         On August 20, 2003, at another IEP meeting, the expert with whom the

14  District had contracted to assess H.B.[4] discussed the need for a "transition

15  plan" to the District. H.B.'s parents articulated their concern that the

16  District could not provide appropriate services to H.B., but the notes from

17  the IEP meeting do not indicate how the District responded to this concern.

18  The special day class at Lupin Hill was suggested at that meeting.

19         Shortly thereafter, the District refused to continue fully funding H.B.'s

20  education at the Elliott Institute. H.B. was permitted to stay at the Elliott

21  Institute, despite the District's apparent bias against such a placement, only

22  because H.B.'s parents sought a stay put order.

23         Later, when the parties could not agree on the IEP at issue in this

24  case, and Plaintiffs again sought a stay put order, the District submitted a

25

26  [4]This need for this assessment, as explained above, was strongly disputed by H.B.'s parents. They believed that the District wished to assess H.B. solely to build a case for

27  transferring him from the Elliott Institute.

28                                    14

declaration to this Court in which one of its representatives stated, "there was a clear understanding that, at the end of . . .two years, [H.B.] would return to the District," and that the "District never agreed that the Elliott Institute was an appropriate placement for" H.B. The District contended that under the settlement agreement that placed H.B. at the Elliott Institute, "the District would propose an IEP for [H.B.] *with the purpose* of bringing him back to the District" (emphasis added). In another declaration, the District stated that under the terms of the settlement agreement, "the District was to re-evaluate [H.B.] and propose an IEP for his return to the District. As a consequence, the District brought in internationally recognized experts in assessing and educating children with autism."

At the IEP meeting of June 24, 2004–the meeting at which the IEP at issue in this case was developed–that H.B. would be transferred to the District was assumed, and alternatives were not even discussed. From the beginning, District personnel noted that the IEP team would "talk about a transition plan." After discussing the goals and objectives, H.B.'s mother asked, "Who would implement this plan?" Mitch Taubman, an expert for the District who assessed H.B. answered, "I'm not sure we're yet talking about the where and when." Dr. Freeman answered, "[t]he bottom line would be everybody would be implementing it all."[5] Dr. Taubman then added, "Some of this is not that dissimilar to the kind of plan that we have working in places already and one of those places is Curran's classroom." Curran Cummings is the proposed teacher for H.B. at Lupin Hill.

After discussing the goals and objectives, Ms. Schillinger, a

---

[5]Although this statement is vague, Dr. Freeman was evidently referring to the personnel present at the IEP meeting, most of whom were District personnel.

15

representative of the District, stated

> [W]hat we'll do next is talk about how we're going to have [H.B.] meet
> these goals and objectives. When we do that we talk about looking at
> general education and could we meet those goals and objectives in
> general education? Do we need to have some supports coming in?
> Should he come out for a certain period of time? We'll kind of walk
> through that discussion and see what our placement recommendation
> would be.

Almost immediately the discussion turned to Ms. Cummings's special day class in the District. She was present at the meeting and acted as one of H.B.'s assessors. No other alternatives were discussed. The option of keeping H.B. at the Elliott Intitute was not discussed. After discussing each of the components of the IEP and how they would be implemented (through the District), Ms. Schillinger stated, "then the next piece we would be talking about a transition time. Where we would be looking at transitioning him from Elliott to our program . . ."

From the time H.B. attended the Elliott Institute, it was clear that the District intended to transfer him to the District (regardless of whether the District's program was suitable to meet his individual needs). Allowing him to stay at the Elliott Institute was not considered (regardless of the amount of progress made or whether it was best suited to meet his individual needs). It was clear to the District that H.B.'s parents desired for him to stay at the Elliott Institute. At the IEP meeting of August 20, his parents expressed their concern that the District was unable to provide H.B. with a FAPE. However, there is no evidence that H.B's parents' concerns were ever addressed. There is no evidence in the record wherein the IEP team

16

discussed the comparative strengths or weaknesses of the Elliott Institute or
Lupin Hill or addressed whether the Elliott Institute would be capable of
implementing the proposed IEP.  Rather, as the District admits in its
responding brief, it was "well-understood" that H.B. would not be permitted
to stay at the Elliott Institute.  The District's determination to remove H.B.
from the Elliott Institute and place him in a public program does not
evidence the sort of open-mindedness that is necessary to comply with the
IDEA.  As in *Deal*, the District was fully aware of the parents' wishes and yet
failed to address them in any meaningful way.

The District argues that it may "prepare reports and come with pre-
formed opinions regarding the best course of action for the child as long as
[it is] willing to listen to the parents and parents have an opportunity to
make objections and suggestions." *N.L. v. Knox County Schools*, 315 F.3d
688, 694 (6th Cir. 2003).  In other words, the District argues that it was not
required to attend the IEP meeting with no preconceptions as to the proper
placement for H.B.  However, the evidence shows that the District did far
more than prepare reports or form opinions.  It shows that over a course of
several years, the District assumed that H.B.'s placement would be within
the District.  The District understood the *purpose* of H.B.'s IEP was to
transfer him to the District.  There is no evidence they were willing to listen
to H.B.'s parents regarding their desire to keep him at the Elliott Institute.

The District further argues that H.B.'s mother participated in the IEP
meeting, that she asked questions and made suggestions.  It is true that
H.B.'s mother sought further information regarding the goals and objectives,
and that District personnel and experts attempted to explain the goals and
objectives clearly.  However, H.B.'s mother provided no input on H.B.'s

17

placement, and the transcript of the IEP meeting shows that no one asked for H.B.'s mother's input on his placement. H.B.'s mother did not volunteer her position. However, by the time the June 24, 2004 IEP meeting occurred, H.B.'s parents had expressed their lack of confidence in the District on prior occasions. They had twice sought stay put orders when the District disputed its obligation to fund H.B.'s education at the Elliott Institute. H.B.'s mother's position was known. Further expression of her desire to keep H.B. at the Elliott Institute, after years of litigation and IEP meetings in which the District confidently declared that H.B.'s next IEP would transfer him to the District, would have been futile. As the court explained in *Deal*, simply having a parent present at and IEP meeting and participating in the development of goals and objectives is not meaningful if the parent is excluded from participation in the decision as to "operative" portions of the IEP. H.B.'s parents were excluded from participation in development of the "operative" portions of H.B.'s IEP: they were excluded from deciding who would teach H.B. and where. Although H.B.'s mother was present at the IEP meeting when these matters were discussed, her input was neither sought nor given. No serious consideration was given to H.B.'s parents position regarding the proper placement of their son.

The Court finds by a preponderance of the evidence that H.B.'s placement was predetermined, and accordingly, the procedural requirements of the IDEA were violated. The Hearing Officer did not address this particular argument (or it was not raised), so there is no amount of deference the Court need give to the Hearing Officer's opinion on this matter. Because the Court finds there was a procedural violation, it need not consider whether the proposed IEP is substantively appropriate. The decision of the

18

1   Hearing Officer is reversed.

## IV. Conclusion

3   The decision of the Hearing Officer is reversed. The Court does not

4   rule on the Motion to Strike because it is moot.

August 18, 2005

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

19

**EXHIBIT B**

1  Howard A. Friedman, State Bar # 061187
   Howard J. Fulfrost, State Bar # 176498
2  Christopher H. Knauf, State Bar #185180
   LOZANO SMITH
3  2400 28TH Street, Suite 240
   Santa Monica, California 90405
4  Tel:   (310) 382-5300
   Fax:   (310) 382-5310
5  hfriedman@lozanosmith.com
   cknauf@lozanosmith.com
6  hfulfrost@lozanosmith.com

7  Attorneys for Defendant Las Virgenes Unified School District

8

9              UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11

12  H.B. by and through his Guardian Ad )   CASE NO. CV04-8572 FMC (SSx)
    Litem P.B.; P.B.,                    )
13                                       )   DEFENDANT LAS VIRGENES
                   Plaintiffs,           )   UNIFIED SCHOOL DISTRICT'S
14                                       )   NOTICE OF APPEAL TO THE
    v.                                   )   NINTH CIRCUIT COURT OF
15                                       )   APPEAL
    LAS VIRGENES UNIFIED                 )
16  SCHOOL DISTRICT; CALIFORNIA          )
    SPECIAL EDUCATION HEARING            )
17  OFFICE                               )
                                         )
18                                       )
                   Defendants.           )
19                                       )

20

21  TO THE COURT AND ALL PARTIES AND ATTORNEYS OF RECORD:

22          Notice is hereby given that Defendant Las Virgenes Unified School District

23  hereby appeals to the United States Court of Appeal for the Ninth Circuit from the

24  Order Reversing Decision of Hearing Officer and Order Finding Moot

25  ///

26  ///

27  ///

28  ///

DOCKETED ON CM

9-27-05

BY      032

Defendant Las Virgenes USD's Notice of Appeal      1      CASE NO. CV04-8572 FMC (SSx)

EXHIBIT B      28

40

Defendants' Motion to Strike, entered by the United States District Court, Central District, on August 25, 2005.

Dated:   September 16, 2005

LOZANO SMITH

Christopher H. Knauf
Attorneys for Defendant
Las Virgenes Unified School District

# PROOF OF SERVICE
(Fed. R. Civ. P. 5 (a), 5(b))

I declare that I am employed in the County of Los Angeles, California. I am over the age of 18 years and not a party to this action; my business address is 2800 28th Street, Suite 240, Santa Monica, California.

On **September 16, 2005**, I served the foregoing: DEFENDANT LAS VIRGENES UNIFIED SCHOOL DISTRICT'S NOTICE OF APPEAL TO THE NINTH CIRCUIT COURT OF APPEAL; CIVIL APPEALS DOCKETING STATEMENT parties as indicated below:

[X]  *(BY REGULAR MAIL)* I caused a copy of said document(s) to be placed for mailing in a United States mail depository at Santa Monica, California, in accordance with my employer's ordinary practice for collection and processing of mail, in a sealed envelope, with postage fully prepaid, to the interested parties herein.

George Crook, Esq.
Valerie Vanaman, Esq.
Newman, Aaronson, Vanaman
14001 Ventura Boulevard
Sherman Oaks, California 91423-3558
Fax: (818) 501-1306

Special Education Hearing Office
University of the Pacific
McGeorge School of Law
3200 Fifth Avenue
Sacramento, California 95817
Fax: (916) 739-7066

Courtesy copy via fax only:
Wendy Jacobs, Esq.
The Weatherly Law Firm
Monarch Plaza, Suite 1550
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
Fax:   (404) 262-1040

[  ]  *(BY PERSONAL SERVICE)* I caused a copy of said document(s) to be hand delivered to the interested parties shown herein.

[  ]  *(BY OVERNIGHT MAIL)* I caused a copy of said document(s) to be deposited into overnight mail (California Overnight or Federal Express) to the parties listed herein.

[X]  *(BY FACSIMILE)* I caused a copy of said document(s) to be sent via facsimile transmission to the interested party(ies) listed above (*and the facsimile machine used to transmit was in compliance with Rule 2003(3) and no error was reported by the machine pursuant to Rule 2005(i)*).

[X ]  *(FEDERAL)* I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **September 16, 2005** at Santa Monica, California.

*Aleta Starcks*
Aleta Starcks

P:\S:n_docs\00696\125\pld\S0048269.WPD
Defendant Las Virgenes USD's Notice of Appeal                3                CASE NO. CV04-8572 FMC (SSx)
EXHIBIT B    30

LOZANO SMITH
2800 28th STREET., SUITE 240, SANTA MONICA, CA 94405-
TEL 310-382-5300  FAX 310-382-5310

**EXHIBIT C**

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.B. by and through his Guardian Ad Litem P.B; P.B., | CV 04-08572 FMC (Ssx) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS** |
| vs. | **ORDER DENYING MOTION TO STAY** |
| LAS VIRGENES UNIFIED SCHOOL DISTRICT, ET AL., | |
| Defendants. | |

ENTERED
CLERK, U S DISTRICT COURT
OCT 2 1 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

This matter is before the Court on Plaintiffs' Motion for Attorney Fees and Costs (docket #37) and Defendant's Motion for Stay (docket #39). The Court has read and considered the moving, opposition, and reply documents submitted in connection with this Motion. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for October 24, 2005, is removed from the Court's calendar. For the reasons and in the manner set forth below, the Court grants Plaintiff's Motion, awarding $327,562.03 in attorney fees and $7,550.76 in costs, and denies Defendant's Motion.

____ Docketed
____ Copies / NTC Sent
____ JS - 5 / JS - 6
____ JS - 2 / JS - 3
____ CLSD

1

(51)

EXHIBIT C    31

1       **I. Background**

2       This action arises under the Individuals with Disabilities Education

3    Act ("IDEA"), 20 U.S.C. §§ 1400 - 1487.   A due process hearing was held in

4    compliance with § 1415(f), in which the state hearing officer held in favor of

5    the School District ("the District").   Plaintiffs filed the present action in this

6    Court, and the Court issued a "stay put" preliminary injunction on March

7    16, 2005.  On administrative review, the Court reversed the decision of the

8    state hearing officer.  The District filed a Notice of Appeal of the Court's

9    order.

10

11      **II. Motion to Stay**

12      The District requests that the Court stay its resolution of the Motion

13   for Attorney Fees because the action is presently under appeal.  This Motion

14   is **denied.**  Rule 4(a)(4)(A)-(B) of the Federal Rules of Appellate Procedure

15   clearly contemplate that the district court will resolve attorney fee motions

16   prior to the appeal being briefed and heard.

17

18      **III. Attorney Fees Under the IDEA**

19      The IDEA grants the Court discretion to award reasonable attorney

20   fees and costs to prevailing parties.  20 U.S.C. §1415(i)(3)(B)-(G).  The

21   amount of attorney fees awarded under the IDEA is determined using the

22   lodestar calculation; i.e., the number of hours reasonably expended on the

23   litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461

24   U.S. 424, 433, 103 S.Ct. 1933 (1983); *see also* 20 U.S.C. § 1415(i)(3)(B)

25   (requiring fees under the IDEA to be based on market billing rates).  Courts

26   may not award bonuses and may not use a multiplier when awarding fees

27

28                                    2

EXHIBIT C    32

1    under the IDEA. 20 U.S.C. § 1415(i)(3)(C)(1). Attorney fees for attendance

2    at an Individualized Education Program ("IEP") team meeting are not

3    compensable. 20 U.S.C. § 1415(i)(3)(D)(ii). The party requesting attorney

4    fees "bears the burden of establishing entitlement to an award and

5    documenting the appropriate hours expended and hourly rates." *Hensley*, 461

6    U.S. at 437, 103 S.Ct. 1933.

7          The District contends that Plaintiffs are not "prevailing parties"

8    within the meaning of the IDEA. In order to be considered a prevailing

9    party, a plaintiff must obtain a judicially sanctioned material alteration of the

10   legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va.*

11   *Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835 (2001)

12   (interpreting the Equal Access to Justice Act attorney fee provision, 42

13   U.S.C. § 1988); *Shapiro v. Paradise Valley Unified School District*, 374 F.3d 857,

14   865 (9th Cir. 2004) (applying the *Buckhannon* definition of prevailing party to

15   the IDEA attorney fee provision).

16         The District argues that Plaintiffs did not seek(and therefore was not

17   granted) affirmative relief. The District maintains that, therefore, there has

18   been no material alteration of the legal relationship of the parties. The

19   District's argument places too much emphasis on the form of the relief

20   awarded, and too little emphasis on its substance. In substance, Plaintiffs

21   sought and were awarded two forms of relief: a "stay put" order and an order

22   reversing the hearing officer's decision. Compl. ¶ 16. They were awarded all

23   the relief they sought. As a result, the District was first precluded by the stay

24   put order from changing H.B.'s placement, and was later precluded from

25   relying on the hearing officer's decision to justify a change to H.B.'s

26   placement. The parties' legal relationship was materially altered by both

27

28                                         3

EXHIBIT C    33

1   forms of relief.

2       The District's argument is that Plaintiff's action did not effectuate

3   affirmative change; rather, it merely preserved the status quo. This is not a

4   barrier to obtaining prevailing party status. Relief that merely preserves the

5   status quo may nonetheless render the party seeking relief a prevailing party.

6   *See Richard S. v. Department of Developmental Services*, 317 F.3d 1080, 1088-89

7   (9th Cir. 2003) (holding that the issuance of a preliminary injunction

8   preserving the status quo rendered the party obtaining the injunction a

9   prevailing party); *accord M.C. v. Board of Education of Whitesboro Central*

10  *School District*, No. 97-CV-1533, 1998 WL 951675, at *2 (N.D.N.Y. Sept. 1,

11  1998) (noting that, in an IDEA case that found prevailing party status, "[a]

12  plaintiff may meet the prevailing party standard by merely preserving the

13  status quo, if such was their intent and the result of the proceeding maintains

14  that favorable position."). *Cf. Parents of Student W v. Puyallup School District*,

15  31 F.3d 1489, 1498 (9th Cir. 1994) (noting that prevailing party status is

16  inappropriate where the success obtained was "purely technical or *de*

17  *minimus*" and holding that the plaintiff was not a prevailing party where such

18  status was argued to be based on the hearing officer's acceptance of the

19  timing of an IEP meeting).

20      Plaintiffs are prevailing parties entitled to fees and costs under the

21  IDEA.

22

23                    **IV. Award of Fees and Costs**

24      Here, Plaintiffs seek attorney fees in the amount of $329,282.03, and

25  costs, including expert witness fees, of $19,550.76.

26      The District argues that the attorney fees sought are excessive in light

27

28                                4

EXHIBIT C    34

of the results obtained. The Supreme Court has noted that consideration of this factor is helpful in determining the reasonableness of a fee request. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933 (1983). The Court noted that this factor is "particularly crucial" where a plaintiff prevails on only some of his claims for relief. Such is not the case here, where Plaintiffs obtained all the relief they sought.[1] Nevertheless, this factor is a helpful one to consider in all cases. *Id.* In this case, Plaintiff obtained all the relief sought, and the results obtained are excellent.

The District correctly argued that the time expended in attending the IEP meeting is not compensable under the IDEA. With the amended billing records submitted with the Reply, the Plaintiff has removed time entries for the IEP meeting. The award of fees does not include time expended in attending the IEP meeting.

The District also argues that Plaintiffs should not be compensated for the expert fees of Robert Kehr, an expert in attorney ethics. Mr. Kehr was consulted regarding an alleged ex parte communication between counsel for the District and Plaintiffs. The Plaintiffs have agreed not to seek

---

[1] Nor is it significant, as the District contends, that the hearing officer's decision was reversed on procedural rather than substantive grounds. The District correctly notes that the Court's order on administrative review did not address whether the proposed IEP was substantively appropriate under the IDEA. However, the IDEA contains not only substantive requirements, but also imposes complex procedural requirements that must be followed.

The District made a similar argument with respect to Plaintiff's status as a prevailing party. *Compare* Opposition at 4:12-21 *with* Opposition at 5:15-22. It is as unconvincing in this context as it was in connection with the prevailing party analysis. The fact that a party may obtain all the relief sought as a result of procedural violations of the IDEA rather than substantive violations does not diminish the extent of that party's success. Accordingly, under the IDEA, success on only procedural grounds does not deprive a party of prevailing party status and does not limit the amount of fees to be awarded.

5

EXHIBIT C    35

1  compensation for these services.

2      Plaintiffs have also submitted a request for payment of fees paid to two

3  other experts (Sandra Kaler, R.N., Ph.D. ($2,000), and Bodil Sivertsen, Ph.D.

4  ($10,000)).  Plaintiffs acknowledge that there is a split of authority regarding

5  whether expert fees are compensable under the IDEA.  Plaintiff urge the

6  Court to follow *Murphy v. Arlington Central School District Board of Education*,

7  402 F.3d 332, 337-39 (2d Cir. 2005) and hold that such fees are compensable.

8      The Court, however, is persuaded by *T.D. v. LaGrange School District*,

9  349 F.3d 469, 481-82 (7th Cir. 2003).  There, the Court held that expert fees

10  are not compensable under the IDEA.  The Seventh Circuit relied on the

11  Supreme Court case of *West Virginia University Hospitals, Inc. v. Casey*, 499

12  U.S. 83, 111 S. Ct. 1138 (1991), which held that expert fees were not

13  compensable under the Equal Access to Justice Act, 42 U.S.C. § 1988.  That

14  attorney fee provision is, in relevant part, identical to the IDEA attorney fee

15  provision.  *Compare* 42 U.S.C. § 1988(c) (authorizing courts to award to

16  prevailing parties in civil rights cases "a reasonable attorney's fee as part of

17  the costs") *with* 20 U.S.C. § 1415(i)(3)(B) (authorizing courts to award to

18  prevailing parties in IDEA cases "reasonable attorneys' fees as part of the

19  costs").  The Supreme Court held that this language was not a statutory

20  authorization that allowed the shifting of expert witness fees.[2]  Because the

21  statutory language is identical,[3] the Court must follow the Supreme Court's

22

23 ─────────────

24  [2] Congress later amended § 1988, explicitly stating that expert fees could be awarded as part of attorney fees.  *See* 42 U.S.C. § 1988(c).  No such amendment was made to the IDEA attorney fee provision.

25

26  [3] Plaintiffs argue that the legislative history of the IDEA attorney fee provision reveals congressional intent to include expert fees as a compensable item.  However, where

27  a statute is unambiguous, the Court may not rely on legislative history and must apply the

28                              6

EXHIBIT C    36

1  holding in *Casey* and exclude expert fees from the amount sought by

2  Plaintiffs in the present Motion.

3       The Court has reviewed the declarations submitted in support of the

4  hourly rates sought by counsel. The Court finds these rates reasonable in

5  light of the prevailing market and the experience of each of the attorneys

6  who worked on this case. The Court finds the hourly rate for law clerks and

7  paralegals ($130 an hour) to be reasonable as well.

8       Although a number of attorneys worked on this case, the Court does

9  not find any unnecessary duplication of effort. From the billing records, it is

10  clear that two attorneys — George D. Crook and Valerie Vanaman — were

11  the primary attorneys handling this case. Other attorneys had only very

12  minor roles that did not lead to a duplication of effort.

13       The Court has also reviewed the hours expended in connection with

14  this case and finds them reasonable, with one exception. On August 5, 2004,

15  Ms. Vanaman spent sixteen hours working on a brief to be filed with the

16  Court. This amount of time devoted to a brief in one day is excessive. The

17  Court reduces this time to a more reasonable twelve hours.

18       The Court has reviewed the costs incurred in connection with this

19  action and finds that they are reasonable as well.

20

21

22

23

24

25  unambiguous language of the statute. *Casey*, 499 U.S. at 98-99. In *Casey*, the Court held

26  that the relevant language is unambiguous. *Id.* at 100. Therefore, the Court is precluded
from referring to legislative history to "expand[] or contract[]" the statute's reach. *See id.* at

27  98.

28                    7

EXHIBIT C   37

Accordingly, the Court awards the following attorney fees and costs:

Amount Requested:

|  | | |
|---|---|---|
| Fees | $329,282.03 |
| Costs | $ 19,550.76 |
| Total | $348,832.79 |
| Less: Expert Fees | $ -12,000.00 |
| Less: Four-hour | |
| Reduction | $ -1,720.00 |
| Total Awarded | $335,112.79 |

## V.  Conclusion

The Court grants the Motion for Fees and Costs (docket #37), and denies the Motion for Stay (docket #39).  Plaintiffs are awarded $327,562.03 in attorney fees and $7,550.76 in costs.

Execution of this order is stayed pending resolution of the Defendant's appeal.

Dated:  October 19, 2005

*[signature]*

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

8

EXHIBIT C     38

**EXHIBIT D**

**FILED**

NOT FOR PUBLICATION

JUL 03 2007

UNITED STATES COURT OF APPEALS

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| H.B., by and through his Guardian Ad Litem P.B.; et al., | No. 05-56486 |
| Plaintiffs - Appellees, | D.C. No. CV-04-08572-FMC |
| v. | |
| LAS VIRGENES UNIFIED SCHOOL DISTRICT, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Florence Marie Cooper, District Judge, Presiding

Argued and Submitted June 14, 2007
Pasadena, California

Before: D.W. NELSON, REINHARDT, and RYMER, Circuit Judges.

Las Virgenes Unified School District ("School District") timely appeals the

district court's order regarding procedural compliance with the Individuals with

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq*. The district court held that the School District violated the IDEA by predetermining the student plaintiff's placement. The School District argues that the district court did not have subject matter jurisdiction to consider the issue of predetermination, and alternatively, that the placement was not predetermined. We find that the issue of predetermination is properly before the court but remand for further factual proceedings regarding the merits of the claim.

I

The School District argues for the first time on appeal that the district court lacked subject matter jurisdiction over the predetermination claim because plaintiffs failed to exhaust the issue administratively. Generally, a plaintiff alleging violation of the IDEA must exhaust administrative remedies before pursuing the claim in federal court. *See Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1050 (9th Cir. 2002). We have held that this exhaustion requirement is jurisdictional. *Id*. Recent Supreme Court decisions raise questions about the extent of this rule and its continuing vitality. *See, e.g., Jones v. Bock*, 127 S.Ct. 910, 921 (2007) (holding that in the context of PLRA claims, failure to exhaust is an affirmative defense rather than a pleading requirement); *Sims v. Apfel*, 530 U.S. 103, 107-11 (2007) (distinguishing issue exhaustion from exhaustion of

2

administrative remedies and holding that Social Security claimants are not required to exhaust issues administratively). We need not resolve these questions in the present case, however, because the issue of predetermination was before the hearing officer. Thus, the district court had subject matter jurisdiction over the issue.

In the underlying administrative decision, the Hearing Officer refused to evaluate predetermination on the ground that plaintiffs had failed to identify it as an issue in their preliminary statement of issues or at the beginning of the hearing. However, both sides questioned witnesses about predetermination and both argued the issue in their closing briefs. This gave the Hearing Officer a clear opportunity to consider predetermination and therefore adequately raised the issue. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) (noting, in the analogous context of issues allegedly raised for the first time on appeal, that the relevant standard is whether "the argument [was] raised sufficiently for the trial court to rule on it.").

## II

On the merits, the School District argues that the district court misinterpreted the standard for predetermination and erred in concluding that the School District violated the IDEA by determining the student plaintiff's placement

3

prior to his Individualized Education Plan ("IEP") meeting.  We conclude that the district court stated the correct standard for predetermination but failed to make factual findings necessary to a decision with respect to this issue.

The district court correctly stated that predetermination occurs when an educational agency has made its determination prior to the IEP meeting, including when it presents one placement option at the meeting and is unwilling to consider other alternatives.  In such case, regardless of the discussions that may occur at the meeting, the School District's actions would violate the IDEA's procedural requirement that parents have the opportunity "to participate in meetings with respect to the identification, evaluation, and educational placement of the child." 20 U.S.C. § 1415(b)(1).  *See also* 34 C.F.R. § 300.501(c)(1) ("Each public agency must ensure that a parent of each child with a disability is a member of any group that makes decisions on the educational placement of the parent's child.").  Our cases emphasize that parents must be invited to attend IEP meetings and must have the opportunity for *meaningful* participation in the formulation of IEPs.  *See Shapiro v. Paradise Valley Unified Sch. District No. 69*, 317 F.3d 1072, 1078 (9th Cir. 2003) ("The Act imposes upon the school district the duty to conduct a meaningful meeting with the appropriate parties.") (quoting *W.G. v. Board of Trustees of Target Range Sch. Dist. No. 23, Missoula, Mont.*, 960 F.2d 1479, 1483

4

(9th Cir. 1992)). Thus, "[a] school district violates IDEA procedures if it independently develops an IEP, without meaningful parental participation, and then simply presents the IEP to the parent for ratification." *Ms. S. ex rel. G. v. Vashon Island School Dist.*, 337 F.3d 1115, 1131 (9th Cir. 2003).

The district court found that the School District determined, prior to the IEP meeting, that the student plaintiff would be moved from his private school to a public school classroom for children with autism. It pointed to evidence that the School District had a longstanding plan to return him to a public school placement. It also noted that at the IEP meeting, the School District assumed that the student would be placed in a public school program, stated that the meeting participants would discuss a transition plan, and did not discuss alternatives to the district's proposed placements. This establishes that the School District desired that the student return to a public school and believed that its proposed placement was appropriate. It does not, however, necessarily establish that the School District was unwilling to consider other placements.

The plaintiff parents did not suggest alternative placements at the IEP meeting, and it is therefore difficult to determine on this record whether the School District would have considered such placements had they been raised. The district court noted that the School District was well aware of the parents' preference that

5

their son stay at his private school and concluded that it would have been futile for them to voice this preference. However, the district court failed to make specific factual findings regarding the School District's intent or state of mind prior to and during the IEP meeting. Without the benefit of such factual findings by the district court on this issue, we are unable to review its predetermination holding on appeal.

Motivation, intent, and state of mind are factual questions that benefit from rigorous examination and analysis by the finder-of-fact. As the district court noted, the hearing officer made no findings on this particular issue. Accordingly, we remand to the district court so that it may conduct an evidentiary hearing and determine on that basis whether the School District was, in fact, willing to consider alternative placements in light of any difficulties or problems that might exist, or that the parents might point out, even though it believed that its proposed placement provided the plaintiff student with a free appropriate public education. Although an educational agency is not required to accede to parents' desired placement, it must maintain an open mind about placement decisions and be willing to consider a placement proposed by the parents, as well as its own proposed placement. The district court may also wish to consider entertaining testimony from the parents and their representatives as to whether they sought to

6

EXHIBIT D   44

participate meaningfully in the IEP meeting and, if not, whether they had a valid reason for failing to do so. In making its ultimate decision, the district court may take this information into account as well.

If, on remand, the district court determines that the School District was unwilling to consider parental input regarding placement, it shall make findings to that effect. If it reaches a contrary conclusion, it shall consider any other claims regarding procedural and substantive compliance with the IDEA. The district court may conduct such additional proceedings on remand as it deems appropriate or necessary.

**VACATED AND REMANDED.**

7

**EXHIBIT E**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.B., by and through his Guardian Ad Litem PENNY B.; PENNY B., | 2:04-cv-08572-FMC-SSx |
| Plaintiff, | |
| vs. | ORDER ON REMAND |
| LAS VIRGENES UNIFIED SCHOOL DISTRICT; CALIFORNIA SPECIAL EDUCATION HEARING OFFICE, | |
| Defendant. | |

On August 22, 2005, this Court issued its Order Reversing Decision of Hearing Officer. The matter was appealed, and on July 3, 2007, the Ninth Circuit Court of Appeals vacated this Court's Order and Remanded the matter for further findings. On February 1, 2008, the Court conducted an evidentiary hearing on the issue highlighted by the Court of Appeals, and the parties subsequently filed Closing Argument Briefs. The Court has now considered the evidence adduced at the hearing and the parties' briefing, along with the substantial documentary record in this case, and issues the following Findings and Order.

**1. District Court Order:**

In its Order of August 22, 2005, the Court reversed the decision of the Hearing

EXHIBIT E    46

officer, based on its conclusion that the procedural requirements of the IDEA had been violated. The Court cited the following evidence in support of its conclusion that H.B.'s removal from the Elliott Institute had been predetermined by the District before the IEP hearing was held:

Here, Plaintiffs point to substantial evidence that the District intended, from the time H.B. was placed at the Elliott Institute, to transfer him back to the district. At an IEP meeting held in October, 2001, shortly after H.B. began at the Elliott Institute, it was noted, "The IEP team agrees to reconvene in April 2002 to discuss a transition plan back to District" and "IEP team agrees to an observation at home and school in order to provide a beginning of transition planning to return [H.B.] to District Program." This was despite the progress H.B. had made while at the Elliott Institute and their recognition that private school placement had been necessary.

On August 20, 2003, at another IEP meeting, the expert with whom the District had contracted to assess H.B. discussed the need for a "transition plan" to the District. H.B.'s parents articulated their concern that the District could not provide appropriate services to H.B., but the notes from the IEP meeting do not indicate how the District responded to this concern. The special day class at Lupin Hill was suggested at that meeting.

Shortly thereafter, the District refused to continue fully funding H.B.'s education at the Elliott Institute. H.B. was permitted to stay at the Elliott Institute, despite the District's apparent bias against such a placement, only because H.B.'s parents sought a stay put order.

Later, when the parties could not agree on the IEP at issue in this case, and Plaintiffs again sought a stay put order, the District submitted a declaration to this Court in which one of its representatives stated, "there was a clear understanding that, at the end of . . .two years, [H.B.] would return to the District," and that the "District never agreed that the Elliott Institute was an appropriate placement for" H.B. The District contended that under the settlement agreement that placed H.B. at the Elliott Institute, "the District would propose an IEP for [H.B.] *with the purpose* of bringing him back to the District" (emphasis added). In another declaration, the District stated that under the terms of the settlement agreement, "the District was to re-evaluate [H.B.] and propose an IEP for his return to the District. As a consequence, the District brought in internationally recognized experts in assessing and educating children with autism."

At the IEP meeting of June 24, 2004–the meeting at which the IEP at issue in this case was developed–that H.B. would be transferred to the District was assumed, and alternatives were not even discussed. From the beginning, District personnel noted that the IEP team would "talk about a transition plan." After discussing the goals and objectives, H.B.'s mother asked, "Who would implement this plan?" Mitch Taubman, an expert for the District who assessed H.B. answered, "I'm not sure we're yet talking about the where and when." Dr. Freeman answered, "[t]he bottom line would be everybody would

be implementing it all." Dr. Taubman then added, "Some of this is not that dissimilar to the kind of plan that we have working in places already and one of those places is Curran's classroom." Curran Cummings is the proposed teacher for H.B. at Lupin Hill.

After discussing the goals and objectives, Ms. Schillinger, a representative of the District, stated:

> [W]hat we'll do next is talk about how we're going to have [H.B.] meet these goals and objectives. When we do that we talk about looking at general education and could we meet those goals and objectives in general education? Do we need to have some supports coming in? Should he come out for a certain period of time? We'll kind of walk through that discussion and see what our placement recommendation would be.

Almost immediately the discussion turned to Ms. Cummings's special day class in the District. She was present at the meeting and acted as one of H.B.'s assessors. No other alternatives were discussed. The option of keeping H.B. at the Elliott Intitute was not discussed. After discussing each of the components of the IEP and how they would be implemented (through the District), Ms. Schillinger stated, "then the next piece we would be talking about a transition time. Where we would be looking at transitioning him from Elliott to our program . . ."

1    From the time H.B. attended the Elliott Institute, it was
2    clear that the District intended to transfer him to the
3    District (regardless of whether the District's program was
4    suitable to meet his individual needs). Allowing him to
5    stay at the Elliott Institute was not considered (regardless
6    of the amount of progress made or whether it was best
7    suited to meet his individual needs). It was clear to the
8    District that H.B.'s parents desired for him to stay at the
9    Elliott Institute. At the IEP meeting of August 20, his
10   parents expressed their concern that the District was
11   unable to provide H.B. with a FAPE. However, there is
12   no evidence that H.B's parents' concerns were ever
13   addressed. There is no evidence in the record wherein the
14   IEP team discussed the comparative strengths or
15   weaknesses of the Elliott Institute or Lupin Hill or
16   addressed whether the Elliott Institute would be capable
17   of implementing the proposed IEP. Rather, as the District
18   admits in its responding brief, it was "well-understood"
19   that H.B. would not be permitted to stay at the Elliott
20   Institute. The District's determination to remove H.B.
21   from the Elliott Institute and place him in a public
22   program does not evidence the sort of open-mindedness
23   that is necessary to comply with the IDEA. As in *Deal*,
24   the District was fully aware of the parents' wishes and yet
25   failed to address them in any meaningful way.
26   August 22, 2005 Order Reversing Decision of Hearing Officer, pages 14 - 16.
27       **2. Circuit Court Order:**
28       In its Memorandum of July 3, 2007, the Ninth Circuit concluded that this court

had not made "specific factual findings regarding the School District's intent or state of mind prior to and during the IEP meeting" and remanded the matter to this court for an evidentiary hearing.

### 3. Findings After Remand:

At the February 1, 2008, hearing, the court heard testimony from Mary Schillinger, assistant superintendent for education of the Los Virgenes School District;  Betty Jo Freeman, Professor at UCLA School of Medicine;  Mitch Taubman, Director of Autism Partnership;  and the mother of the student.

Mary Schillinger testified to the many factors taken into consideration in assessing and deciding on placement.  She testified that she came to the meeting with an open mind and would do whatever the team concluded was best suited to meet the student's needs.  The testimony, however, is belied by her opening statement at the beginning of the IEP meeting: "Okay, so what we'll be doing today is going through the assessment *results* and then we will talk about those goals and objectives.  And we'll talk about how we can meet those goals and objectives, program services – that discussion – *then we'll talk about a transition plan."*  When counsel for the parents questioned the meaning of the term "transition plan," Ms. Schillinger explained they would talk about "what can we do to make a smooth *transition between what's happening now and what our offer is."  Admin. Record, Volume VII, page 1586, (emphasis added)* Later in the hearing, when a question about the Elliott Institute was raised, Ms. Schillinger responded: "Elliott is not an issue at an IEP hearing." *Admin. Record, Volume VII, page 1604*

When confronted with contemporaneous evidence and a witness' later explanation of intent, the Court is generally more persuaded by what people said at the time of an incident, rather than their subsequent assessment of what they meant. That is true in this case.  All of the circumstantial evidence of the defendants' intent (as detailed in the Court's earlier order and recited again above) supports the conclusion that the decision to transfer H.B. back to the district had been reached

EXHIBIT E   51

before the meeting was conducted.  Ms. Schillinger's testimony at the hearing did not persuade the Court otherwise.

Nor is the Court's assessment altered by the testimony of Drs. Freeman and Taubman.  Certainly their testimony established that they have the best interests of the minor child at heart.  And it should be emphasized that in its Orders in this case, the Court has not found, and does not find, that the IEP proposed for H.B. is not a FAPE or that, on the merits, it is deficient for any reason.  The Court addresses only the procedural defect of the IEP hearing.

One of the requirements of a procedurally valid IEP meeting is meaningful participation by the parents.  Here, although the student's mother attended the IEP and did participate in some parts of the discussion, the Court finds credible her explanation that her minimal participation was based on her sense of futility.  She reasonably believed that the transition of her son from Elliott to Lupin Elementary was a foregone conclusion.

**4. Conclusion:**

The Court concludes that, before the IEP meeting began, the District was not willing to consider alternative placements for the student.  The Court does not believe the testimony of the district representatives to the contrary.  The Court finds by a preponderance of the evidence that H.B.'s placement was predetermined and, accordingly, the procedural requirements of the IDEA were violated.  The decision of the Hearing officer is reversed.

Dated this 26th day of March 2008.

_____
JUDGE FLORENCE-MARIE COOPER
United States District Court Judge

**EXHIBIT F**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:04-cv-08572-FMC-SSx | Date | June 13, 2008 |
|---|---|---|---|
| Title | H Berry et al v. Las Virgenes Unified School District et al | | |

| Present: The Honorable | FLORENCE-MARIE COOPER |
|---|---|

| Alicia Mamer | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not present | Not present |

**Proceedings:**   ORDER STAYING ADJUDICATION OF ATTORNEYS' FEES MOTION
(In Chambers)

The Court is in receipt of Plaintiffs' Motion for Attorneys' Fees and Costs (docket no. 82), filed on April 21, 2008. Plaintiffs seek to (1) re-confirm and reinstate the Court's October 20, 2005 order awarding their attorneys' fees in connection with the Court's August 22, 2005 opinion reversing the decision of the administrative hearing officer; and (2) obtain an additional award of fees encompassing time spent litigating Defendants' appeal of that decision and subsequent proceedings on remand. The total amount of fees sought is $707,754.70.

On April 22, 2008—the day after Plaintiffs filed their attorneys' fees motion—Defendants filed a Notice of Appeal to the Ninth Circuit Court of Appeals of this Court's March 26, 2008 Order on Remand. In their Opposition to the attorneys' fees motion (filed on April 28, 2008), Defendants indicate that, as part of their appeal, they will be raising the argument that this Court lacked subject matter jurisdiction on remand because there was no longer any live "case or controversy" between the parties (i.e., the suit was "moot"). Under the circumstances, the Court will defer the adjudication of Plaintiffs' request for attorneys' fees until such time as the appeal is completed.

Accordingly, Plaintiffs' Motion for Attorney's fees (docket no. 82) is removed from the Court's active calendar and adjudication is STAYED until the issuance of a decision by the Ninth Circuit on Defendants' latest appeal. The parties shall inform this Court within ten (10) days of the Circuit Court's decision or any other order disposing of the appeal.

|  | : | N/A |
|---|---|---|
| Initials of Preparer | AM | |

EXHIBIT F  53

**EXHIBIT G**

FILED

**NOT FOR PUBLICATION**

MAR 11 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| H. BERRY, by and through his Guardian Ad Litem Penny Berry; et al., | No. 08-55693 |
| Plaintiffs - Appellees, | D.C. No. 2:04-cv-08572-FMC-SS |
| v. | MEMORANDUM [*] |
| LAS VIRGENES UNIFIED SCHOOL DISTRICT, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Submitted March 2, 2010
Pasadena, California

Before: RYMER and WARDLAW, Circuit Judges, and KENNELLY, [**] District
Judge.

---

[*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]  The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

The Las Virgenes Unified School District (School District) appeals the district court's determination that it violated the procedural requirements of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.,* by predetermining the placement of an autistic boy, H.B., prior to his individualized education program (IEP) meeting. We previously considered this case and remanded so that the district court could make findings regarding the School District's intent or state of mind prior to and during the IEP meeting. *H.B. v. Las Virgenes Unified Sch. Dist.*, 239 F. App'x 342 (9th Cir. 2007). The court held an evidentiary hearing on remand, and made factual determinations that we review for clear error. *See Ash v. Lake Oswego Sch. Dist.*, 980 F.2d 585, 588 (9th Cir. 1992). Seeing none, we affirm.

Based on testimony from School District representatives and the child's mother at the evidentiary hearing as well as the entire record, the district court found that the decision to transfer H.B. from his private placement to the district had been made before the meeting was held. It specifically found district representatives' testimony about being open to considering alternative placements incredible, and found credible the mother's testimony that her minimal participation was due to futility. These findings are not clearly erroneous. Applying the legal standard endorsed in our prior disposition, the district court concluded that H.B.'s placement was predetermined. This being so, the procedural

requirements of the IDEA were violated, and the hearing officer's decision was properly reversed.

AFFIRMED.

**EXHIBIT H**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JUN 01 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

H. BERRY, by and through his Guardian
Ad Litem Penny Berry and PENNY
BERRY,

          Plaintiffs - Appellees,

v.

LAS VIRGENES UNIFIED SCHOOL
DISTRICT,

          Defendant - Appellant.

No. 08-55693

D.C. No. 2:04-cv-08572-FMC-SS
U.S. District Court for Central
California, Los Angeles

**MANDATE**

RECEIVED
CLERK, U.S. DISTRICT COURT

JUN - 1 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

---

The judgment of this Court, entered March 11, 2010, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

Cost is awarded to the APPELLEE in the amount of $344.50

                    FOR THE COURT:

                    Molly C. Dwyer
                    Clerk of Court

                    Lee-Ann Collins
                    Deputy Clerk

# FILED

**NOT FOR PUBLICATION**

MAR 11 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

H. BERRY, by and through his Guardian
Ad Litem Penny Berry; et al.,

           Plaintiffs - Appellees,

  v.

LAS VIRGENES UNIFIED SCHOOL
DISTRICT,

          Defendant - Appellant.

No. 08-55693

D.C. No. 2:04-cv-08572-FMC-SS

MEMORANDUM[*]

---

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Submitted March 2, 2010
Pasadena, California

Before: RYMER and WARDLAW, Circuit Judges, and KENNELLY,[**] District
Judge.

---

      [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

      [**]    The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

The Las Virgenes Unified School District (School District) appeals the

district court's determination that it violated the procedural requirements of the

Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.,* by

predetermining the placement of an autistic boy, H.B., prior to his individualized

education program (IEP) meeting. We previously considered this case and

remanded so that the district court could make findings regarding the School

District's intent or state of mind prior to and during the IEP meeting. *H.B. v. Las*

*Virgenes Unified Sch. Dist.*, 239 F. App'x 342 (9th Cir. 2007). The court held an

evidentiary hearing on remand, and made factual determinations that we review for

clear error. *See Ash v. Lake Oswego Sch. Dist.*, 980 F.2d 585, 588 (9th Cir. 1992).

Seeing none, we affirm.

Based on testimony from School District representatives and the child's

mother at the evidentiary hearing as well as the entire record, the district court

found that the decision to transfer H.B. from his private placement to the district

had been made before the meeting was held. It specifically found district

representatives' testimony about being open to considering alternative placements

incredible, and found credible the mother's testimony that her minimal

participation was due to futility. These findings are not clearly erroneous.

Applying the legal standard endorsed in our prior disposition, the district court

concluded that H.B.'s placement was predetermined. This being so, the procedural

requirements of the IDEA were violated, and the hearing officer's decision was

properly reversed.

AFFIRMED.

**EXHIBIT I**



Priority   X
Send       X
Enter      X
Closed     X
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 06-1539 CAS (JTLx)                          Date   April 13, 2007

Title      ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT v. B.F., a minor, JAMES F. and LISA F.

---

Present: The Honorable   CHRISTINA A. SNYDER

| CATHERINE JEANG | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                                           Not Present

**Proceedings:**   **(IN CHAMBERS) DEFENDANTS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**
(filed March 13, 2007)

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing date of April 9, 2007, is hereby vacated and the matter is taken under submission.

**I.    INTRODUCTION**

Antelope Valley Union High School District ("the District" or "plaintiff") filed the instant suit on March 13, 2006, against defendants B.F., a minor, and her parents James F. and Lisa F (collectively, "defendants"). The suit arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. The District sought judicial review of an administrative "due process hearing," held pursuant to 20 U.S.C. § 1425, in which the Administrative Law Judge ("ALJ") found in favor of defendants. On February 26, 2007, the Court granted defendants' motion for summary judgment, and denied the District's cross-motion.

On March 13, 2007, defendants filed the instant motion for attorneys' fees and costs. Plaintiff did not file an opposition. Defendants' motion is presently before the Court.

**II.   DISCUSSION**

Defendants seek attorneys' fees and costs, in the amount of $182,975.89, pursuant to the IDEA for both the underlying due process hearing before the ALJ, and the instant action. The IDEA provides that, "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . (I) to a prevailing party who is the parent of a child with a disability." 20

CV-90 (06/04)                    CIVIL MINUTES - GENERAL                    Page 1 of 3

EXHIBIT I   60

.ghtFAX          4/16/2007 12:32   PAGE 003/004   Fax Server

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-1539 CAS (JTLx) | Date | April 13, 2007 |
|---|---|---|---|

| : Title | ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT v. B.F., a minor, JAMES F. and LISA F. |
|---|---|

U.S.C. § 1415(i)(3)(B). The prevailing party in an IDEA action "should ordinarily recover their attorneys' fees unless special circumstances would render such an award unjust." Abu-Sahyun v. Palo Alto Unified School District, 843 F.2d 1250 (9th Cir. 1988). The Court concludes that defendants are the prevailing parties, and are therefore entitled to the recovery of attorneys' fees and costs.

Where fee awards are appropriate and available, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The Court has an independent duty to determine whether the hours and hourly rate submitted by the fee applicant are "reasonable," and to reach its own "lodestar" value. The lodestar amount is "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." Id. at 433. In cases brought under the IDEA, fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C).

### A. Hourly Rate

Hourly fees are calculated according to prevailing market rates in the legal community where the fee applicant performs the legal services. Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691, 696 (9th Cir. 1996). "[T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 104 (1984); Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

Defendants seek the following hourly rates:

| | |
|---|---|
| Warren Finn | $280 |
| George D. Crook | $525 |
| Henry Tovmassian | $425 |
| John W. Chan | $140 |
| Sharon Robinson | $390 |
| Valerie Vanaman | $525 |

Defendants submit the declarations of Carol A. Sobel and Marcy J.K. Tiffany in support of their requested hourly rates. Sobel and Tiffany are attorneys, and have not previously been involved in the instant action. Sobel declares that, based upon her personal knowledge of prevailing market rates, defendants' proposed hourly rates are "far below market rate for attorneys of comparable skill and experience" for similar services. Decl. of Carol A. Sobel ¶¶ 4, 7, 13. Tiffany states that the billing rates of Vanaman and Crook are reasonable "in light of their ability, achievements, and professional reputations" in the special education

EXHIBIT I   61

RightFAX                 4/18/2007 12:32   PAGE 004/004   Fax Server

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-1539 CAS (JTLx) | Date | April 13, 2007 |
|---|---|---|---|
| Title | ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT v. B.F., a minor, JAMES F. and LISA F. | | |

community.  Decl. of Marcy J.K. Tiffany ¶ 17.  Accordingly, the Court concludes that defendants have satisfied their burden to show that their requested rates are reasonable.

**B. Time Expended**

Defendants' counsel spent 249.70 hours on the underlying proceeding, which took place before the ALJ, and 248.60 hours on the instant action.  After review of the declarations of George Crook and Warren Finn and supporting documents, submitted in support of defendants' request for attorneys' fees and costs, the Court concludes that the time expended by counsel for defendants is reasonable.

**V.     CONCLUSION**

In accordance with the foregoing, the Court GRANTS plaintiff's motion for attorneys' fees and costs in the amount of $182,975.89.

IT IS SO ORDERED.

Initials of Preparer

EXHIBIT I    62

| | |
|---|---|
| Priority | X |
| Send | X |
| Enter | X |
| Closed | X |
| JS-5/JS-6 | |
| JS-2/JS-3 | |
| Scan Only | |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-1539 CAS (JTLx) | Date | April 13, 2007 |
|---|---|---|---|

Title · ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT v. B.F., a minor, JAMES F. and LISA F.

ENTERED
CLERK, U.S. DISTRICT COURT

APR 16 2007

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Present: The Honorable   CHRISTINA A. SNYDER

| CATHERINE JEANG | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) DEFENDANTS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**
(filed March 13, 2007)

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing date of April 9, 2007, is hereby vacated and the matter is taken under submission.

## I.   INTRODUCTION

Antelope Valley Union High School District ("the District" or "plaintiff") filed the instant suit on March 13, 2006, against defendants B.F., a minor, and her parents James F. and Lisa F (collectively, "defendants"). The suit arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. The District sought judicial review of an administrative "due process hearing," held pursuant to 20 U.S.C. § 1425, in which the Administrative Law Judge ("ALJ") found in favor of defendants. On February 26, 2007, the Court granted defendants' motion for summary judgment, and denied the District's cross-motion.

On March 13, 2007, defendants filed the instant motion for attorneys' fees and costs. Plaintiff did not file an opposition. Defendants' motion is presently before the Court.

## II.   DISCUSSION

Defendants seek attorneys' fees and costs, in the amount of $182,975.89, pursuant to the IDEA for both the underlying due process hearing before the ALJ, and the instant action. The IDEA provides that, "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . (I) to a prevailing party who is the parent of a child with a disability." 20

| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 1 of 3 |
|---|---|---|

(51)

EXHIBIT 63

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-1539 CAS (JTLx) | Date | April 13, 2007 |
|---|---|---|---|
| : Title | ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT v. B.F., a minor, JAMES F. and LISA F. | | |

U.S.C. § 1415(i)(3)(B). The prevailing party in an IDEA action "should ordinarily recover their attorneys' fees unless special circumstances would render such an award unjust." Abu-Sahyun v. Palo Alto Unified School District, 843 F.2d 1250 (9th Cir. 1988). The Court concludes that defendants are the prevailing parties, and are therefore entitled to the recovery of attorneys' fees and costs.

Where fee awards are appropriate and available, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The Court has an independent duty to determine whether the hours and hourly rate submitted by the fee applicant are "reasonable," and to reach its own "lodestar" value. The lodestar amount is "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." Id. at 433. In cases brought under the IDEA, fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C).

### A. Hourly Rate

Hourly fees are calculated according to prevailing market rates in the legal community where the fee applicant performs the legal services. Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691, 696 (9th Cir. 1996). "[T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 104 (1984); Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

Defendants seek the following hourly rates:

| | |
|---|---|
| Warren Finn | $280 |
| George D. Crook | $525 |
| Henry Tovmassian | $425 |
| John W. Chan | $140 |
| Sharon Robinson | $390 |
| Valerie Vanaman | $525 |

Defendants submit the declarations of Carol A. Sobel and Marcy J.K. Tiffany in support of their requested hourly rates. Sobel and Tiffany are attorneys, and have not previously been involved in the instant action. Sobel declares that, based upon her personal knowledge of prevailing market rates, defendants' proposed hourly rates are "far below market rate for attorneys of comparable skill and experience" for similar services. Decl. of Carol A. Sobel ¶¶ 4, 7, 13. Tiffany states that the billing rates of Vanaman and Crook are reasonable "in light of their ability, achievements, and professional reputations" in the special education

---

EXHIBIT 64                                    58

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-1539 CAS (JTLx) | Date | April 13, 2007 |
|---|---|---|---|
| Title | ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT v. B.F., a minor, JAMES F. and LISA F. | | |

community. Decl. of Marcy J.K. Tiffany ¶ 17. Accordingly, the Court concludes that defendants have satisfied their burden to show that their requested rates are reasonable.

**B. Time Expended**

Defendants' counsel spent 249.70 hours on the underlying proceeding, which took place before the ALJ, and 248.60 hours on the instant action. After review of the declarations of George Crook and Warren Finn and supporting documents, submitted in support of defendants' request for attorneys' fees and costs, the Court concludes that the time expended by counsel for defendants is reasonable.

**V.     CONCLUSION**

In accordance with the foregoing, the Court GRANTS plaintiff's motion for attorneys' fees and costs in the amount of $182,975.89.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | |

CV-90 (06/04)                    CIVIL MINUTES - GENERAL                    Page 3 of 3

**EXHIBIT J**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | | Date | November 10, 2008 |
|---|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG MICHELE MURRAY | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

John Fiske
Geoffrey R. Winterowd

Attorneys Present for Defendants:

Henry Tovmassian
George Crook

**Proceedings:** **DEFENDANTS' MOTION FOR ATTORNEYS' FEES** (filed 09/25/08)

## I. INTRODUCTION

On April 2, 2007, plaintiff Torrance Unified School District ("the District") brought the instant action against defendants E.M., a minor; Maryl Magee, E.M.'s mother and guardian ad litem ("Ms. Magee") (collectively, "defendants"); and the California Office of Administrative Hearings ("OAH"). The instant action is an administrative appeal of a due process hearing before OAH, in which defendants alleged that the District failed to provide E.M. with a free appropriate public education ("FAPE") during the 2003-04, 2004-05, and 2005-6 school years, in violation of the Individuals with Disabilities Act (the "IDEA"), 20 U.S.C. §§ 1400 et seq. In the due process hearing, defendants alleged that they were entitled to (1) compensatory education, (2) reimbursement for and prospective placement at a nonpublic school, and (3) reimbursement for the costs of obtaining an independent assessment. The Administrative Law Judge's ("ALJ") decision found that the District did not violate its child find obligation during the 2003-04 and 2004-05 school years, and therefore did not deny E.M. a FAPE during the 2003-04 and 2004-05 school years, but that the District had denied E.M. a FAPE during the 2005-06 school year, and that, therefore, defendants were entitled to the three forms of relief sought.[1] The District sought review of those issues of

---

[1]A school district breaches its child find duty if it had reason to, but did not, suspect a child as having a disability and needing special education services, and therefore did not assess the child for such services. See Dep't of Educ. v. Cari Rae S.,

**CIVIL MINUTES - GENERAL**

EXHIBIT J    66

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

the administrative decision on which defendants had prevailed. On May 29, 2007, defendants filed a counterclaim seeking review of those issues of the administrative decision on which the District prevailed.

On August 21, 2008, this Court upheld the administrative decision, finding that, as of October 27, 2005, E.M. qualified as a child with a disability by reason of a "serious emotional disturbance." As a result, the Court held that the District had denied E.M. a FAPE to which she was entitled during the 2005-06 school year, and that the ALJ had appropriately ordered the District to classify E.M. as eligible for special education and to reimburse defendants for the cost of attending a non-public school. However, the Court also upheld the ALJ's finding that the District did not violate its child find obligation during the 2003-04 and 2004-05 school years.

On September 25, 2008, defendants filed the instant motion for attorneys' fees, pursuant to 20 U.S.C. § 1415(i)(3)(B), seeking attorneys' fees and costs totaling $431,770.05.[2] See Reply, Ex. B. On October 27, 2008, the District filed an opposition. On October 28, 2008, the District filed a notice of errata and an amended opposition. A reply was filed on November 3, 2008. A hearing was held on November 10, 2008. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. DISCUSSION

Under the IDEA, 20 U.S.C. § 1415(i)(3)(B), "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." Congress' intent was to provide parents with disabled

---

158 F. Supp. 2d 1190, 1194 (D. Hawaii 2001)

[2] In their Reply, defendants request $432,225.05, which includes hours spent in connection to the instant motion for attorneys' fees. However, at oral argument, defendants requested that the Court subtract $325 charged for 2.5 hours of work on September 26, 2008 and $130 charged for .4 hours of work on October 31, 2008, which were charged in error. Therefore, the Court has subtracted $455 from the requested attorneys' fee award.

EXHIBIT J 67

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|----------|----------------------|------|-------------------|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

children a substantive right that could be enforced through the procedural mechanisms in the IDEA.  Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell, 940 F.2d 1280, 1286 (9th Cir. 1991).

Attorneys' fees awarded under the IDEA are governed by the "degree of success" standard, in which a partially prevailing party may not recover fees for unsuccessful claims, and the level of the party's success is relevant to the amount of fees to be determined.  See Aguirre v. Los Angeles Unified School District, 461 F.3d 1114, 1121 (9th Cir. 2006) (applying analysis used in Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).  Indeed, "the most critical factor is the degree of success obtained."  Id.  The hourly rate for fees charged "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. 1415(i)(3)(c).

The District contests many of the $431,770.05 of attorneys' fees and costs claimed by defendants on the grounds that (1) many of the hours charged were spent on matters not reasonably related to the litigation; (2) many of the hours charged were duplicative or excessive; (3) the calculated rates were unreasonable; and (4) defendants were unsuccessful on some of their claims.  Therefore, the District argues, defendants are only entitled to recover $48,465.25.[3]

### A.    Hours Reasonably Related to the Litigation

The District argues that many of the hours charged by defendants were spent on matters not reasonably related to the instant litigation.  Opp'n at 4.

### 1.    Expulsion Proceedings

First, the District argues that hours spent on matters pertaining to expulsion proceedings that the District initiated against E.M. must be excluded, because the expulsion proceeding was entirely separate from the administrative due process hearing at issue in the instant action.  Opp'n at 5.  The District points out that neither the ALJ nor

---

[3] This estimate does not include time charged in connection with the instant motion.

EXHIBIT J    68

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|----------|----------------------|------|-------------------|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

this Court made any holding regarding E.M.'s expulsion from school.  Opp'n at 5.
Therefore, the District argues, hours spent in connection with the expulsion proceedings
must be excluded.

Defendants, however, argue that their claims regarding E.M.'s expulsion involve a
core of facts related to E.M.'s eligibility for special education and were based on
interconnected legal theories.  Reply at 19.  Defendants argue that because IDEA prohibits
the expulsion of students with disabilities for behavior that is a manifestation of the
disability, and because the District expelled E.M. several months after she became eligible
under IDEA, defendants' efforts to prevent E.M's expulsion as a violation of the IDEA are
compensable.[4]  Reply at 20, citing Doe v. Maher, 793 F.2d 1470, 1486 (9th Cir. 1986).

Defendants further argue that the District's calculations of the time charged related
to the expulsion hearing, contained in the District's Exhibit B to the Geoffrey Winterowd
declaration, do not accurately segregate attorney time spent on the expulsion proceedings
from time spent on other proceedings, because some of the charges that were wholly
disregarded by the District as applying to the expulsion proceeding also related to due
process issues.  Reply at 20.  Defendants appear to be correct that some of the charges
identified by the District as being related to the expulsion proceeding also contain charges

---

[4] 20 U.S.C. § 1415(k)(5)provides that

A child who has not been determined to be eligible for special education and
related services under this part [20 USCS §§ 1411 et seq.] and who has
engaged in behavior that violates a code of student conduct, may assert any
of the protections provided for in this part [20 USCS §§ 1411 et seq.] if the
local educational agency had knowledge. . . that the child was a child with a
disability before the behavior that precipitated the disciplinary action
occurred.. . . If a local educational agency does not have knowledge that a
child is a child with a disability . . . prior to taking disciplinary measures
against the child, the child may be subjected to disciplinary measures applied
to children without disabilities who engaged in comparable behaviors . . .

EXHIBIT J   69

Case 2:04-cv-09049-DOC-SS   Document 7160   Filed 11/10/10   Page 5 of 15   Page ID

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2164 CAS (RZx) | | Date | November 10, 2008 |
|----------|----------------------|---|------|-------------------|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | | |

for hours related to the administrative due process hearing as well.[5]

The Court finds the District is correct that attorneys' fees incurred for work related to E.M.'s expulsion hearing are not directly related to the instant proceeding. The expulsion hearing was a distinct proceeding than the instant action, and neither the OAH nor this Court made any holding regarding E.M's expulsion from school. However, the Court is also mindful that there was likely overlap of core facts and legal theories, and that some of the fees identified by the District as being related to the expulsion proceeding may be partially related to the due process hearing as well. Therefore, the Court finds that defendants are entitled to half of the $24,453 in fees identified by the District as relating to the expulsion hearing. The Court therefore reduces defendants' fees by $12,226.50.

### 2. IEP Team Meetings

Second, the District argues that fees incurred on October 25, 2005 and October 27, 2005 related to an October 27, 2005 team meeting regarding E.M.'s Individualized Education Program ("IEP") were not convened as a result of the administrative proceeding or the Court proceeding, because defendants had not yet filed a request for an expedited due process hearing. Opp'n at 8, citing 20 U.S.C. § 1415(i)(3)(D)(ii) ("Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action.")
Defendants do not dispute that the 4.9 hours spent on October 25, 2005 and October 27, 2005 related to the October 27, 2005 IEP meeting should not be included. Therefore, the Court reduces defendants' attorneys' fees by $686.

### 3. Work Related to Defendants' Separate Complaint for Damages

The District argues that defendants are not entitled to recover fees for work related to defendants' separate complaint for damages billed on June 27, 2007, July 17, 2008, July 27, 2007, August 1, 2007, and September 15, 2007. Defendants agree that the entries on June 27, 2007, July 27, 2007, and August 1, 2007 should be deducted. Defendants further agree that 1.3 of the 1.6 hours charged on July 17, 2007 should be deducted. However,

---

[5] For example, the charges for November 3, 2005 and December 1, 2005 appear to relate to both the expulsion hearing and the due process hearing.

EXHIBIT J    70

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|----------|----------------------|------|-------------------|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

they argue, and the Court agrees, that there does not appear to be any charge related to the complaint for damages on September 15, 2007. Therefore, the Court reduces the attorneys' fees award by $792, the total of the charges on June 27, 2007, July 27, 2007, August 1, 2007, and 1.3 hours of the charges on July 17, 2007.

**4.      Work Related to Defendants' Requests for Continuances and Extensions, Defendants' Motion for Preliminary Injunction, and Defendants' Renewed Request for an Expedited Due Process Hearing**

The District argues that defendants are not entitled to recover fees for hours spent requesting continuances and extensions of time, given that such requests did not result from any action taken by the District, and because the District agreed to these continuances and extensions.[6] Opp'n at 9. The District also argues that defendants are not entitled to recover fees incurred in filing their motion for preliminary injunction, wherein defendants requested that the Court order the District to comply with the OAH decision. Opp'n at 11. The District argues that they should not be charged for these fees, because (1) defendants were not successful on this motion and (2) defendants could have achieved the same goal through filing an opposition to the District's motion for a stay of the administrative order.[7]  In addition, the District argues that defendants cannot collect fees incurred for the filing of a renewed request for an expedited due process hearing before the OAH. Opp'n at 14-15. This renewed request was filed after the OAH denied defendants' request for an expedited due process hearing on November 30, 2005. Opp'n at 14. The District argues that the renewed request was both meritless and unsuccessful. Opp'n at 14.

Defendants, however, argue that the District has presented no authority to support

---

[6] The District states however that it does not dispute claimed hours spent opposing the District's motion to continue the due process hearing. Opp'n at 9.

[7] On September 10, 2007, the Court denied both the District's motion for stay and defendants' motion for preliminary injunction. Because the two motions were heard on the same day, the District does not oppose fees charged by defendants for appearing at the consolidated hearing.

EXHIBIT J   71

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2164 CAS (RZx) | | Date | November 10, 2008 |
|----------|----------------------|---|------|-------------------|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | | |

its argument that defendants are not entitled to recover these fees. Reply at 17.
Furthermore, with regard to the motion for preliminary injunction and the renewed request
for an expedited due process hearing, defendants argue that although they were not
ultimately successful on these motions, they are nevertheless entitled to the entire fee
because their claims were related and arose from a common set of facts as those that were
argued successfully in the instant action. Reply at 17.

The Court finds that because defendants ultimately prevailed on their claims as
discussed in Part II.D infra, they are entitled to reasonable attorneys' fees, even for work
on motions that were not ultimately successful. Therefore, the Court declines to deduct
fees for hours related to defendants' request for continuances and extensions, defendants'
motion for preliminary injunction, and defendants' renewed request for an expedited due
process hearing.

### B.    Duplicative and Excessive Time

The District additionally argues that many of the hours charged by defendants are
either duplicative or excessive.

### 1.    Duplicative, Unnecessary, and Undocumented Time

The District argues that some of defendants' charged hours are duplicative,
unnecessary, and undocumented. Opp'n at 12. Specifically, the District disputes (1) 2
hours charged for work on July 26, 2006 drafting a writ petition that was never filed; (2)
6.6 of the 8.6 hours charged for work on September 18, 2006 involving, among other
things, analysis of documents for the September 27, 2006 hearing, because, the District
argues, such analysis should have been completed before Defendants' Prehearing
Conference Statement was drafted; (3) 5.6 hours of 6.6 hours charged for work on
September 19, 2006 finalizing the notice of witnesses and exhibit lists when such lists
should have already been finalized by that date; (4) hours charged related to Crook's
attendance at E.M.'s due process hearing, because Tovmassian was the attorney
presenting defendants' case and the record indicates that Crook played no active role; (5)
1.6 of the 2.6 hours charged for time spent updating Ms. Magee and reading a scheduling
order, arguing that only one hour is reasonable; (6) hours charged for Tovmassian on
September 9-10, 2007 to prepare for and attend the hearing on the stay and preliminary

EXHIBIT J   72

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

injunction, because Crook's time for these activities is also billed and Crook was the attorney who presented defendants' case, thereby rendering Tovmassian's time duplicative; and (7) hours charged for both Crook and Tovmassian to attend the March 31, 2008 scheduling conference, when only one attorney was required to attend. Opp'n at 12-13. Defendants, however, argue that the District has failed to provide any evidence that these charges were duplicative, unnecessary, or undocumented. Reply at 19, citing McGrath v. County of Nev., 67 F.3d 248, 255 (9th Cir. 1995) ("the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort").

The Court agrees that the District has failed to provide sufficient evidence that any of the above charges are duplicative, unnecessary, or undocumented, and therefore declines to deduct them from the fee award.

> **2.** **Hours Spent Drafting Defendants' Closing Brief, Defendants' Motion for Summary Judgment, Defendants' Reply to the District's Opening Brief, and Defendants' Reply to the District's Objections to Defendants' Motion for Summary Judgment**

The District argues that the 152.3 hours charged for drafting defendants' closing brief for the administrative due process hearing are excessive, and that they should therefore be reduced to 100 hours. Opp'n at 6. The District also argues that the 107.8 hours charged for drafting defendants' motion for summary judgment are excessive, and that they should therefore be reduced to 60 hours. Opp'n at 6. The District further argues that the 97.6 hours charged for drafting defendants' reply to the District's opening brief and defendants' reply to the District's objection to defendants' motion for summary judgment are excessive, given that the reply to the opening brief was limited to 10 pages, and the reply to the District's objections would not have been necessary if defendants had conformed their motion for summary judgment to the Local Rules.[8] Opp'n at 7. Therefore, the District argues that the hours should be reduced to 50 hours. Opp'n at 8.

Defendants, however, argue that the District presents no evidence to substantiate its claim that the hours spent on these filings were unreasonable. Reply at 15-16.

---

[8] The District's objections stated that defendants' motion improperly referenced documents not part of the administrative record and was improperly long

EXHIBIT J   73

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

The Court agrees that the District has failed to present any evidence that these fees are unreasonable. The Court therefore declines to deduct them from the fee award.

### 5. Costs

The District argues that defendants cannot recover costs for such charges as messenger services, telephone, postage, Westlaw, office expenses associated with the due process hearing and the appeal of the due process hearing decision, because IDEA does not provide for a separate award of costs. Opp'n at 19.

The IDEA states that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . ." 20 USC § 1415(i)(3)(B)(I). In <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S. 291, the Court held that "the term 'costs' in 20 U.S.C. § 1415(i)(3)(B), like the same term in Fed. R. Civ. P. 54(d), is defined by the categories of expenses enumerated in 28 U.S.C. § 1920." In other words, the Court held that under the IDEA, parties are entitled to recover costs for

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title [28 USCS § 1923];
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

28 U.S.C. § 1920.

Furthermore, additional costs claimed by defendants' attorneys may be recovered as part of the attorneys' fee award. Because out-of-pocket litigation expenses that would normally be charged to a fee-paying client are reimbursable as part of the attorneys' fee, distinct from costs. <u>See</u> <u>Harris v. Marhoefer</u>, 24 F.3d 16, 19-20 (9th Cir. 1994); <u>Sexcius v. District of Columbia</u>, 839 F. Supp. 919, 927 (D.D.C. 1993) ("reasonable photocopying,

EXHIBIT J    74

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|----------|----------------------|------|-------------------|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

postage, long distance telephone, messenger, and transportation and parking costs are customarily considered part of a reasonable attorney's fee"). Because the costs claimed by defendants appear to be those that would normally be billed by an attorney to clients, and the costs claimed are reasonable, the award of costs is appropriate.

### C.    Reasonableness of Calculated Rates

Under 20 USC § 1415 (i)(3)(C), attorneys' fees awarded in an IDEA action "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of service furnished." In <u>Davis v. San Francisco</u>, 976 F.2d 1536, 1544 (9th Cir. 1987), <u>vacated in part on denial of hearing</u>, 984 F.2d 245 (9th Cir. 1993), the Court noted that attorneys' fees should be calculated with "close attention paid to the fees charged by lawyers of reasonably comparable skill, experience, and reputation."

The hourly rate charged by defendants' attorney Valerie Vanaman ("Vanaman"), an attorney with Newman Aaronson Vanaman ("NAV") was $575. Vanaman Decl. ¶ 19. The hourly rate charged by defendants' attorney Henry Tovmassian ("Tovmassian"), an of counsel with NAV, was $495. Tovmassian Decl. ¶ 8. The hourly rate charged by defendants' attorney George Crook ("Crook"), an attorney with NAV, was $575 per hour. Crook Decl. ¶ 9. Vanaman, Tovmassian, and Crook each state that the rate they charged is less than the prevailing market hourly rate for an attorney with comparable skill and experience in Los Angeles. Defendants also submit the declaration of Carol Sobel, a civil rights practitioner in Los Angeles, who states that she is familiar with the work of defendants' attorneys, and that she believes that the rates charged are far below market rate for attorneys of comparable skill and experience. Sobel Decl. ¶ 4. She further states that the rate of $575 is $100 below her billing rate for 2008, despite the fact that Vanaman and Crook graduated from law school before she did. Sobel Decl. ¶ 4. Sobel also cites other cases in this district awarding attorneys' fees over $575 per hour in civil rights litigation. With their reply, defendants also file an additional declaration of Marcy J.K. Tiffany ("Tiffany"), an attorney who practices in the special education field and who is familiar with NAV, who states that the NAV rates are comparable with her firm's rates, which in May 2006 were $440 for due process proceedings and $525 for state and federal court litigation. Tiffany Decl. ¶ 8-10. Tiffany further states that the billing rates for paralegals at her firm are $115-$175. Tiffany Decl. ¶ 9.

EXHIBIT J   75

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

The District, however, argues that the hourly rate charged by defendants' attorneys should be no greater than $350 per hour, arguing that this rate is in line with the prevailing market rate for similar services by lawyers of reasonably comparable skill. Opp'n at 14. The District argues that the declarations of Vanaman, Tovmassian, and Crook are insufficient to establish that the rates charged are reasonable, because "it is the fee applicant's burden to produce evidence, other than the declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Opp'n at 16; see Miller v. San Mateo-Foster City Unified School Dist., 318 F.Supp. 2d 851, 865 (N.D. Cal. 2004). The District further asserts that the Sobel declaration is insufficient to establish that defendants' attorneys' fees are reasonable. The District argues that the cases cited by Sobel in which comparable attorneys' fees were awarded are irrelevant because they did not involve similar legal issues, and that Sobel's knowledge regarding the setting of rates by attorneys with comparable skill and experience does not pertain specifically to attorneys representing parents and students under the IDEA. Opp'n at 18. The District cites two special education cases in which reasonable hourly rates for attorneys were set between $225 and $350 per hour. Opp'n at 19, citing J.C. v. Vacaville Unified School District, CIV. S-05-0092 KJM (E.D. Cal. 2007); Noyes v. Grossmont Union High School District, 331 F.Supp.2d 1233, 1249 (S.D. Cal. 2004). The District also submits three declarations from Margaret A. Chedester, Ricardo Soto, and Peter Sansome, each of whom state that their firms represent clients at due process hearings under IDEA in southern California (including Los Angeles, Riverside, Orange, San Diego, and San Bernadino) and that the rates they charge are under $300.

The District further argues that defendants' request for reimbursement for clerical work done on September 18-20, 2006 and August 27, 2007 at a rate of $140 per hour is unreasonable. Opp'n at 19. The District argues that clerical work should be charged at no more than $90 per hour. Opp'n at 19.

Defendants, however, argue that they have made a sufficient prima facie showing of the reasonableness of the rates charged. Reply at 9. Defendants argue that they have established the reasonableness of their rates through (1) the Tovmassian, Crook and Vanaman declarations, which set forth, among other things, their background and experience and their past rate determinations; (2) the Sobel and Tiffany declarations, which establishes NAV's reputation as a firm and establishes that the NAV rates are in

EXHIBIT J　76

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|----------|----------------------|------|-------------------|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

line with those in the community; (3) evidence of other court-ordered attorneys' fee awards, including those involving Tovmassian, Crook, and Vanaman, which are relevant to determining market rates; and (4) the 2004 Helder Associates' Attorney Billing Rate Survey, which establishes that the hourly rates sought by NAV are below the prevailing rate. Reply at 11.

Furthermore, defendants argue, the District has not rebutted defendants' showing of reasonableness. Reply at 12. Defendants argue that the evidence submitted by the District – the Chedester, Soto, and Sansome declarations – are irrelevant, because Chedester, Soto, and Sansome are each school district attorneys, and attorneys hired by districts are not in the same legal market as private plaintiffs' attorneys. Reply at 12.

The Court finds that defendants have sufficiently established that the rates charged by Tovmassian, Crook, and Vanaman are reasonable. The Tiffany and Sobel declarations submitted by defendants demonstrate that the rates charged by defendants' attorneys are comparable to the fees charged by lawyers of reasonably comparable skill, experience, and reputation engaged in special education and other civil rights litigation. The Tiffany declaration further establishes that the rates charged for clerical work are reasonable as well. Therefore, the Court declines to reduce the rate charged to $350 per hour.[9]

**D.     Unsuccessful Claims**

The District argues that the calculated fees should be adjusted downwards, because defendants were only successful on some of their claims. Opp'n at 20; See J.C. v. Vacaville Unified School District, 2007 WL 112138 (E.D. Cal.) (the most relevant factor

---

[9] At oral argument, the District argued that fee rates for administrative proceedings should be lower than the rate for proceedings in court. In a supplemental pleading filed on November 11, 2008, defendants cite S.W. ex. rel. N.W. v. Board of Educ. of City of New York (Dist. Two), 257 F.Supp. 2d 600, 605 (S.D.N.Y. 2003), in which the court held that there was "no support in the law" for the proposition that fee awards for IDEA administrative proceedings should be lower than fee awards for "full blown trials or litigation in court." The court held that such a distinction would be "contrary to public policy," in that it would discourage attorneys from providing representation in IDEA administrative proceedings, an area where there is already "a dearth of lawyers." See id. Given this holding, the Court declines to reduce the fees for administrative proceedings.

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

in the case was the degree of success achieved, allowing the attorney to be awarded 40% of attorneys' fees because the attorney prevailed on 40% of the claims). Specifically, the District argues that, in defendants' request for an expedited due process hearing, defendants claimed (1) a denial of FAPE for the 2003-2004 school year; (2) a denial of FAPE for the 2004-2005 school year; (3) that the District could not expel E.M.; and (4) a denial of FAPE for the 2005-2006 school year. Opp'n at 20. The District argues that, because defendants lost on the first two issues, and because defendants never obtained a holding from the OAH or the District that E.M. could not be expelled, their claimed attorneys' fees should be reduced by 75%.

In Webb v. Sloan, 330 F.3d 1158, 1169 (9th Cir. 2003), the court held that, where the prevailing party has not won every claim brought, the court must determine the appropriate reduction in attorneys' fees to compensate for the limited success. The first step is to consider whether "the [defendants] failed to prevail on claims that were unrelated to the claims on which [they] succeeded." Id., citing Hensley, 461 U.S. at 434. "Claims are unrelated if they are entirely distinct and separate from the claims on which the [defendants] prevailed." Id. If the hours are unrelated and unsuccessful, they should not be included in the award of fees. Id. The second step is to consider whether "the [defendants] achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. "Where a [defendant] has obtained excellent results, his attorney should recover a fully compensatory fee." Id.

Defendants argue that they obtained "excellent results," in that they succeeded in securing all of the relief they sought: namely: (1) compensatory education, (2) reimbursement for and prospective placement at a nonpublic school, and (3) reimbursement for the costs of obtaining an independent assessment. Reply at 2, 8. Although defendants concede they had also contended that the District denied E.M. a FAPE during the 2003-04 and 2004-05 school years, defendants argue that they did not seek any relief from these claims beyond the relief they eventually obtained from OAH, and they presented these arguments only to comply with their obligation to exhaust administrative remedies before filing a complaint for damages. Reply at 2, n.1. Furthermore, defendants argue, evidence presented regarding E.M. during the 2003-04 and 2004-05 school years contributed to defendants' successful showing that E.M. was eligible for special education as of 2005. Reply at 8-9. Therefore, they argue, it would be impossible to separate the attorney hours charged on a claim-by-claim basis. Reply at 8.

EXHIBIT J 78

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

In addition, defendants note that the Supreme Court has rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Hensley, 461 U.S. at 435, n.11.

The Court finds that, regardless of the fact that defendants did not succeed on their claims that the District denied E.M. a FAPE in 2003-04 and 2004-05, defendants are entitled to recover all of the fees claimed, except as otherwise noted herein. Defendants' unsuccessful claims were not "entirely distinct and separate" from their successful claims, but instead arise from a "common core of facts," as evidence of E.M.'s situation during 2003-04 and 2004-05 were relevant in defendants' successful showing that E.M. was eligible for special education in 2005. See Webb, 330 F.3d at 1169; See OAH Decision (January 5, 2007) ¶ 63 ("By the time of the District's psychoeducational assessment, however, Student's history from kindergarten onward demonstrated a pattern of unpredictable and aggressive temper tantrums across numerous environments. . . and there was no reason to anticipate that they would simply stop"). Furthermore, defendants "obtained excellent results" in the instant action, because they obtained all of the relief they sought, regardless of the fact that they were not successful on some of their claims. See id. Therefore their attorneys "should recover a fully compensatory fee." See id.

## IV. CONCLUSION

In accordance with the foregoing, the Court GRANTS defendants' motion for attorneys' fees against the District. The Court reduces the attorneys' fees by $12,226.50 (half of the fees identified by the District as related to the expulsion hearing), $686 (fees related to the IEP team meeting), and $792 (fees related to defendants' separate complaint for damages). Therefore the Court awards $418,065.55 in attorneys' fees to defendants.

IT IS SO ORDERED.

EXHIBIT J   79

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2164 CAS (RZx) | Date | November 10, 2008 |
|---|---|---|---|
| Title | TORRANCE UNIFIED SCHOOL DISTRICT v. ERIN MAGEE, ET AL. | | |

| 00 | : | 10 |
|---|---|---|
| Initials of Preparer | | MDM |

EXHIBIT J   80

**EXHIBIT K**

# Newman Aaronson Vanaman
## Detailed Billing History

**Case Reference: Howard Berry v. Las Virgenes Unified School District**
**Our File# BERRY.P04317GDC**

| Bill Date | Staff | Desc | Rate/Price | Dur/Qty | Gross |
|---|---|---|---|---|---|
| 3/18/2010 | GC | Prepare report of 9th Circuit's decision to district court pursuant to Judge Cooper's June 13, 2008 order. | 650.00 | 0.60 | 390.00 |
| 5/12/2010 | GC | Research re current and future applications of District's mootness defense re our attorneys' fees motion as stayed by Judge Cooper. | 650.00 | 4.10 | 2,665.00 |
| 5/12/2010 | HT | Conference with Mr. Crook and Ms. Robinson regarding Mr. Crook's research on District's claim of mootness and its impact on fee motion; review and analyze decisions regarding same. | 550.00 | 1.00 | 550.00 |
| 5/12/2010 | SR | Conference with Mr. Crook and Mr. Tovmassian regarding issues related to mootness doctrine and recovery of attorneys fees. | 500.00 | 0.50 | 250.00 |
| 5/12/2010 | VV | Telephone call with Ms. Berry regarding current issues and concerns and next steps. | 650.00 | 0.40 | 260.00 |
| 5/13/2010 | GC | Research re current and future application of District's mootness defense re our attorneys' fees motion as stayed by Judge Cooper. | 650.00 | 1.80 | 1,170.00 |
| 6/4/2010 | GC | Teleconference with Mr. Pearl re actions to be taken in 9th Circuit and district court. | 650.00 | 0.10 | 65.00 |
| 6/7/2010 | GC | Leave two messages for Mr. Weatherly re possible ex parte application. | 650.00 | 0.30 | 195.00 |
| 6/7/2010 | GC | Review local rules and Judge Colllins' "local rules" re ex parte applications; leave message for Mr. Weatherly re same. | 650.00 | 1.00 | 650.00 |
| 6/9/2010 | GC | Teleconferences with Mr. Weatherly to continue meet and confer process re attorney fees issue in district court and procedural aspects thereof; follow up teleconference with Mr. Pearl and leave message with Judge Cooper's court clerk re reactivation of case in district court for decision on attorneys' fees. | 650.00 | 1.10 | 715.00 |
| 6/10/2010 | GC | Teleconference with court clerk to Judge Cooper re reactivation and re-assignment of case for plaintiffs' attorneys fees motion; receive notice of reassignment to Judge Snyder; final meet and confer telephone conference with Mr. Weatherly; discuss stipulation re timing of motions and oppositions; prepare stipulation re timelines for motion. | 650.00 | 1.40 | 910.00 |
| 6/11/2010 | JC | Proof read and E-file Stipulation and Order to Extend Time to file Fees and Costs Motion | 170.00 | 0.30 | 51.00 |
| 6/25/2010 | GC | Complete draft of introduction and history; prepare email to Mr. Pearl re status | 650.00 | 1.40 | 910.00 |
| 6/30/2010 | GC | Re-do draft introduction and history for fee motion in district court | 650.00 | 2.30 | 1,495.00 |
| 7/14/2010 | GC | Conference with Ms. Robinson re District Court fee motion and Ms. Sobel's declaration; email to Ms. Sobel re same. | 650.00 | 0.30 | 195.00 |

EXHIBIT K    81

| Bill Date | Staff | Desc | Rate/Price | Dur/Qty | Gross |
|---|---|---|---|---|---|
| 7/14/2010 | SR | Conference with Mr. Crook re status of District Court fee motion and issues for Ms. Sobel's declaration. | 500.00 | 0.30 | 150.00 |
| 7/15/2010 | GC | Review draft points and authorities, billing history in connection with motion, my declaration and that of Ms. Vanaman's and Ms. Robinson's; email to Mr. Pearl re issues and status. | 650.00 | 2.80 | 1,820.00 |
| 7/16/2010 | JC | Review draft of fee motion in District Court and compile exhibits. | 170.00 | 2.00 | 340.00 |
| 7/19/2010 | GC | Telephone conference with Mr. Tovmassian regarding his assistance in finalizing motion and related documents. | 650.00 | 0.30 | 195.00 |
| 7/19/2010 | HT | Telephone conference with Mr. Crook regarding need to review and finalize motion and related documents; review and finalize motion and Declarations of Mr. Crook and Ms. Vanaman; prepare Declarations of Henry Tovmassian and Sharon Robinson; meeting with Mr. Crook to discuss same. | 550.00 | 4.00 | 2,200.00 |
| 7/20/2010 | JC | Prepare Declarations and Exhibits for E-Filing and E-File | 170.00 | 3.00 | 510.00 |
| | | | | | **15,686.00** |

**Expenses**

| Bill Date | Staff | Desc | Rate/Price | Dur/Qty | Gross |
|---|---|---|---|---|---|
| 3/11/2010 | VV | Fax transmittal sent to Lewis Ross, Mediatior | 1.00 | 4.00 | 4.00 |
| 3/16/2010 | VV | Fax transmittal sent to Charles Weatherly of The Weatherly Law Firm | 1.00 | 3.00 | 3.00 |
| 3/17/2010 | VV | Fax transmittal sent to Donald Zimring Ph.D. of Las Virgenes USD | 1.00 | 2.00 | 2.00 |
| 3/19/2010 | GC | Court Filing/Rush for Notice of Decision on Court Appeal | 69.50 | 1.00 | 69.50 |
| 5/3/2010 | VV | Fax transmittal sent to Charles Weatherly | 1.00 | 4.00 | 4.00 |
| 5/14/2010 | GC | Fax transmittal sent to Charles Weatherly | 1.00 | 2.00 | 2.00 |
| 5/14/2010 | GC | Fax transmittal sent to Susan Curtis | 1.00 | 2.00 | 2.00 |
| 6/29/2010 | JC | Photocopies | 0.20 | 313.00 | 62.60 |
| 7/14/2010 | | Court Filing | 1.00 | 41.50 | 41.50 |
| | | | | | **190.60** |

| | | | | | |
|---|---|---|---|---|---|
| | | **Total Time and Expenses** | | | **15,876.60** |

| SUMMARY OF TIME | Rate | Hours | Amt Billed |
|---|---|---|---|
| John Chan | 170.00 | 5.30 | 901.00 |
| George Crook | 650.00 | 17.50 | 11,375.00 |
| Sharon Robinson | 500.00 | 0.80 | 400.00 |
| Henry Tovmassian | 550.00 | 5.00 | 2,750.00 |
| Valerie Vanaman | 650.00 | 0.40 | 260.00 |
| | | | **15,686.00** |

EXHIBIT K    82